UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
CHAVEZ-ARELLANO,                  )
                                                    )
            Plaintiff,                            )
                                                    )
      v.                                            )          Civil Action No. 05CV2503 (RMC)
                                                    )
UNITED STATES DEPARTMENT      )
   OF JUSTICE et al.,                      )
                                                    )
                                                    )
            Defendants.                        )
_____)

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendants United States Department of Justice, Federal Bureau of Investigation ("FBI"),

Executive Office for the United States Attorneys ("EOUSA"), and the Drug Enforcement

Administration ("DEA"), by and through undersigned counsel, respectfully move this Court for

summary judgment because there are no material issues of fact and defendants are entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In support of this motion, Defendant refers

the Court to the attached memorandum of points and authorities, statement of material facts not

in genuine dispute, and the declarations of David M. Hardy, John E. Boseker and Leila I.

Wassom.

*Pro Se* Plaintiff should take notice that any factual assertions contained in the affidavits

and other attachments in support of defendant's motion will be accepted by the Court as true

unless the plaintiff submits his own affidavits or other documentary evidence contradicting the

assertions in the defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992),

Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A statement of material facts not genuinely in dispute and draft order are also filed herewith.

Dated: March 10, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
KAREN L. MELNIK, D.C. BAR # 436452
Assistant United States Attorney
555 4TH Street, N.W. - Room E 4112
Washington, D.C.  20530
(202) 307-0338

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                      )
CHAVEZ-ARELLANO,                      )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )        Civil Action No. 05CV2503 (RMC)
                                      )
UNITED STATES DEPARTMENT              )
    OF JUSTICE et al.,                )
                                      )
                                      )
        Defendants.                   )
_____)

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Defendants, through counsel, respectfully submit this memorandum of points and

authorities in support of their motion for summary judgment.

**SUMMARY**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

Plaintiff's FOIA request to the Federal Bureau of Investigation ("FBI"), the Executive Office for

the United States Attorneys ("EOUSA"), and the Drug Enforcement Administration ("DEA").

The requests at issue here seek information relating to Plaintiff's criminal conviction.  The FBI

responded that it did not have documents responsive to Plaintiff's request.  EOUSA withheld one

page in full and released one page in part.  The DEA released 24 pages in their entirety, released

114 pages in part, and withheld 6 pages in their entirety.

Plaintiff's FOIA claims should be dismissed because EOUSA's and the DEA's redactions

and withholdings clearly fall within exemptions to FOIA disclosure requirements.  The

disclosure of the records at issue would constitute an unwarranted invasion of privacy, reveal

information that would be privileged in civil litigation, and/or could reasonably be expected to

endanger the life or physical safety of an individual.  The declarations of David M. Hardy, John

F. Boseker, and Leila I. Wassom describe their respective agency's response to Plaintiff's FOIA

requests and demonstrate that EOUSA and DEA properly withheld documents pursuant to

Exemptions 2, 5, 7(C), 7(D), 7(F), and the Privacy Act ("PA") 5 U.S.C. § 552(a)(j)(2).

Plaintiff's challenge should be denied and summary judgment granted to defendant.

## FACTUAL BACKGROUND

The relevant facts are contained in the attached Statement of Material Facts Not in

Genuine Dispute.

## ARGUMENT

The core purpose of FOIA is to shed light on government operations and activity.

Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773

(1989).  The statute was designed "to pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny." Department of the Air Force v. Rose, 425 U.S. 352, 361

(1976).  Allowing public access to government documents will enable an informed citizenry to

hold the governors accountable to the governed.  John Doe Agency v. John Doe Corporation, 493

U.S. 146, 151 (1989).

FOIA, however, does not allow the public to have unfettered access to government files.

McCutchen v. Department of Health and Human Services, 30 F.3d 183, 184 (D.C. Cir. 1994).

Although disclosure is the dominant objective of FOIA, there are several exemptions to the

statute's disclosure requirements.  Department of Defense v. FLRA, 510 U.S. 487, 494 (1994).

2

To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. Public Citizen Health Research Group v. FDA, 185 F.3d 898, 904 (D.C. Cir. 1999). An agency is entitled to summary judgment where there are no material facts in dispute and the requested information has been produced or is exempted from disclosure under FOIA. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001).

## I.    Legal Standards

### A.    Evidentiary Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987). Once the moving party has met its burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the court to find he is entitled to relief.

In Celotex Corp. v. Catrett, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986); see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to

3

find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

**B.      Summary Judgment in FOIA Cases**

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980). In a FOIA suit, an agency is entitled to summary judgement once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. See Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

As a practical matter, this standard for summary judgment means that the agency must provide the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. See, e.g., Center for Nat'l Security Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003); Hayden, 608 F.2d at 1384, 1386. Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not

4

impugned by evidence . . . of bad faith on the part of the agency.'" <u>Public Citizen, Inc. v. Dept. of State</u>, 100 F. Supp.2d 10, 16 (D.D.C. 2000) (quoting <u>McGhee v. Central Intelligence Agency</u>, 697 F.2d 1095, 1102 (D.C. Cir. 1983)); <u>see also</u> <u>Nat'l Security Studies</u>, 331 F.3d at 927.

Typically, the agency's declarations or affidavits are referred to as a Vaughn index, after the case of <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). There is no set formula for a <u>Vaughn</u> index.  "[I]t is well established that the critical elements of the <u>Vaughn</u> index lie in its function, and not in its form." <u>Kay v. FCC</u>, 976 F. Supp. 23, 35 (D.D.C. 1997).

The purpose of a <u>Vaughn</u> index is "to permit adequate adversary testing of the agency's claimed right to an exemption." <u>NTEU v. Customs</u>, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing <u>Mead Data Central v. United States Dept. of the Air Force</u>, 566, F.2d 242, 251 (D.C. Cir. 1977), and <u>Vaughn v. Rosen</u>, 484 F.2d 820, 828 (D.C. Cir. 1973), <u>cert</u>. <u>denied</u>, 415 U.S. 977 (1974)). Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record". <u>NTEU</u>, 802 F.2d at 527 n.9.

The <u>Vaughn</u> Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. <u>See</u> <u>Citizens Com'n on Human Rights v. Food and Drug Admin.</u>, 45 F.3d 1325, 1326 (9th Cir. 1995).  "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt under FOIA." <u>Founding Church of Scientology of Washington, D.C., Inc. v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

Here, the DEA has submitted a declaration and a coded <u>Vaughn</u> index in support of this

motion for summary judgment.  The declaration was prepared by Leila I. Wassom, Paralegal

Specialist with the Office of the Chief Counsel, Administrative Law Section, DEA.  <u>See</u> Wassom

Decl. at ¶ 1.  The Wassom declaration meets the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820

(D.C. Cir. 1973), <u>cert.</u> <u>denied</u>, 15 U.S. 977, 94 S.Ct. 1564 (1974), and provides the Court with

the requisite basis to grant defendant's motion.  The <u>Vaughn</u> itemizations identify and describe

the documents responsive to plaintiff's FOIA requests (to the extent responsive documents were

found), and set forth the justification for exemptions claimed for the withholding of certain

documents.

Where the agency responds that it can neither confirm nor deny the existence of

responsive records, as EOUSA has with respect to one of Plaintiff's requests in this case, courts

do not require a detailed listing of the responsive records, but instead require a publicly filed

affidavit or declaration explaining, in as much detail as possible, why the "Glomar" response is

necessary to support of the agency's claim of a FOIA exemption from release, without itself

violating the third parties' privacy.  <u>See</u> <u>Burke v. U.S. Dep't of Justice</u>, 1999 WL 1032814

(D.D.C. Sept. 30, 1999) (citing <u>Enzinna v. U.S. Dep't of Justice</u>, 1997 WL 404327, *2 (D.C. Cir.

1997); <u>Wheeler v. CIA</u>, 2003 WL 21675312, *5 (D.D.C. June 4, 2003) (quoting <u>Phillippi v. CIA</u>,

546 F.2d 1325 (D.C. Cir. 1981)).  <u>See generally</u> <u>Minier v. Central Intelligence Agency</u>, 88 F.3d

796, 800 (9th Cir. 1996) (approving use of Glomar response where agency concession that

records existed would itself provide the information that the exemption seeks to protect); <u>Nation</u>

<u>Magazine v. U.S. Customs Service</u>, 71 F.3d 885, 894 n.8 (D.C. Cir. 1995) (same); <u>Hunt v.</u>

<u>Central Intelligence Agency</u>, 981 F.2d 1116, 1118 (9th Cir. 1992); <u>Phillippi</u>, 655 F.2d 1325 (first

6

case authorizing such response, named after a secret U.S. government ocean vessel, the Hughes

Glomar Explorer).

## II.     The FBI, EOUSA and DEA Conducted Adequate Searches for Responsive Records.

The agency's burden is to establish that it has conducted a search reasonably calculated to

uncover all responsive records.[1]  Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C.

Cir. 1984).  The issue is not whether there might possibly exist other records responsive to the

request, but whether the search for responsive records was reasonable.  Id.  The agency can

establish the reasonableness of its search by affidavits if they are relatively detailed, non-

conclusory, and made in good faith.  Weisberg, 745 F.2d at 1485.  Summary judgment is

appropriate where the agency submits  a "'reasonably detailed affidavit, setting forth the search

terms and the type of search performed, and averring that all files likely to contain responsive

materials (if such records exist) were searched,'" unless "a review of the record raises substantial

doubt" about the adequacy of the search.  Valencia-Lucena v. United States Coast Guard, 180

F.3d 321, 326 (D.C. Cir. 1999), quoting Oglesby v. Department of Army, 920 F.2d 57, 68 (D.C.

Cir. 1990).

The FOIA does not require that an agency search every division or field office in

response to a FOIA request when responsive documents are likely to be located in one place.

Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  "When a request does not specify

the locations in which an agency should search, the agency has discretion to confine its inquiry to

---

[1]  An agency must respond to a FOIA request only if it "reasonably describes" the records
it seeks.  5 U.S.C. § 552(a)(3)(A).  A request meets this standard only if a professional agency
employee familiar with the subject area is able to locate the requested records with a "reasonable
amount of effort."  H.R. Rep. No. 93-876, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 6271.

a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" Campbell v. United States Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68. "The agency is not required to speculate about potential leads" to the location of responsive documents, Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996), although it is required "to follow through on obvious leads to discover requested documents." Valencia-Lucena, 180 F.3d at 325. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Safecard Serv., Inc. v. Securities & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In this case, the FBI conducted a reasonable search for responsive records and found none. See Hardy Decl. at ¶¶ 19-26. Specifically, in response to plaintiffs requests, FBIHQ searched the Central Records System ("CRS") using plaintiff's name in order to locate any main investigatory files maintained at HQ and the Houston Field Office ("HOFO"). See Hardy Decl. at ¶ 25. A search of the CRS by using the name "Jose Miguel Chavez-Arellano" would cover a thirteen-way phonetic breakdown of the name. See id. For example, this search would locate records using the phonetic sounds of each last and first name relating to the following names: "Arellano, Jose Miguel Chavez"; "Arellano, Jose Miguel"; "Arellano, Jose M."; "Arellano, Jose"; "Arellano, J. Miguel"; "Arellano, J. M.."; "Arellano, Miguel"; "Chavez, Jose Miguel"; "Chavez, Jose M."; "Chavez, Jose"; "Chavez, J. Miguel"; "Chavez, J. M."; and "Chavez, Miguel." See id. FBIHQ also used plaintiffs date of birth and Social Security number to facilitate the identification of responsive records. See id. This search failed to locate any main investigatory files responsive to plaintiff's request. See id. File #M6000103 is not an FBI file number, however,

8

any information relating to plaintiff and "DEA LAB ANALYSIS OF METHAMP1 ETAMINE

AND FINGERPRINT ANALYSIS" would have surfaced as a result of the search of his name in

the CRS.  See id.

      EOUSA also conducted a reasonable search for responsive records, and released a one-

page document in part and withheld a one-page document in full.  All of the records reviewed by

EOUSA in response to plaintiff's requests were located in the United States Attorney's Office for

the Southern District of Texas ("USAO/SDTX").  See Boseker Decl. at ¶ 23.  The USAO/SDTX

conducted a systematic search for records identified by plaintiff.  See Boseker Decl. at ¶ 24.  The

computer case tracking systems, PROMIS and LIONS, were used to determine all possible

locations of responsive files.  See id.  In addition, Mr. Boseker requested that USAO conduct a

second search to confirm the number of responsive documents.  See Boseker Decl. at ¶ 25.

      Lastly, the DEA conducted a reasonable search for responsive records and located a total

of 144 pages.  See Wassom Decl. at ¶ 47.  The DEA released 24 pages in full, withheld 114

pages in part, and withheld 6 pages in full.  See Wassom Decl. at ¶ 35 and Exhibit W.  The

DEA's Investigative Reporting and Filing System (IRFS) system, which contains all

administrative, general and investigative files compiled by DEA for law enforcement purposes,

was searched using the NADDIS index for records responsive to plaintiff's FOIA request.  See

Wassom Decl. at ¶¶ 30-32 (explaining IRFS system), ¶ 33 (explaining NADDIS system).

## III.    EOUSA's And DEA's Declarations Are Sufficient.

      EOUSA has submitted in support of this motion the declaration of John F. Boseker.  Mr.

Boseker is a practicing attorney at the EOUSA, responsible for handling FOIA requests.  See

Boseker Declaration ¶ 1.  Due to the nature of his official duties, Mr. Boseker is familiar with

both the procedures routinely followed by EOUSA in responding to FOIA requests and with the particular actions taken by EOUSA in responding to Plaintiff's request. <u>Id.</u> at ¶ 2. In describing EOUSA's response to Plaintiff's request, Mr. Boseker's declaration is sufficiently detailed and non-conclusory and provides the court with an adequate basis for review of EOUSA's response to Plaintiff's request. There is no evidence of bad faith by the agency.

When the agency has adequately justified its use of the Glomar response to support a FOIA exemption, the courts do not require the agency to conduct a search for responsive records. <u>See</u> <u>Wheeler</u>, 2003 WL 21675312 at *8. In this case, EOUSA could not confirm or deny the existence of responsive records without revealing whether the named individuals had become involved in a criminal investigation. This admission could itself have violated the individuals privacy, contrary to the purpose of Exemption 7(C), and so the Glomar response was appropriate. In light of the appropriateness of the Glomar response, and the agency's justification for it in the attached declaration, it would be wasteful to incur the costs of the search for records which could not be identified anyway.

The DEA has submitted in support of this motion the declaration of Leila I. Wassom. Ms. Wassom is a Paralegal Specialist at the DEA, responsible for handling FOIA requests. <u>See</u> Wassom Decl. at ¶ 1. Due to the nature of her official duties, Ms. Wassom is familiar with both the procedures routinely followed by EOUSA in responding to FOIA requests and with the particular actions taken by the DEA in responding to Plaintiff's request. <u>Id.</u> at ¶¶ 3-5. In describing the DEA's response to Plaintiff's request, Ms. Wassom's declaration is sufficiently detailed and non-conclusory and provides the Court with an adequate basis for review of the DEA's response to Plaintiff's request. There is no evidence of bad faith by the agency.

**IV.    Summary Judgment Is Appropriate For Plaintiff's Claims Against The FBI
Because No Responsive Records Exist.**

Here, the agency carried its burden to show that it conducted a search reasonably
calculated to uncover all responsive records.  See Hardy Decl. at ¶ 25; see Weisberg, 745 F.2d at
1485; Perry v. Block, 684 F.2d at 126.  That is all that is required.  Kuffel v. United States
Bureau of Prisons, 882 F. Supp. 1116, 1120-21 (D.D.C. 1995)(no jurisdiction exists over claims
where agency conducted good faith, reasonable search and found no responsive documents);
Bartlett v. United States Dep't of Justice, 867 F. Supp. 314, 316 (E.D. Pa. 1994).  When a FOIA
request is pending, the agency is only able or obligated to release material that it actually has.
See Maynard, 986 F.2d at 564 ("The fact that a document once existed does not mean that it now
exists; nor does the fact that an agency created a document necessarily imply that the agency has
retained it.").  Because plaintiff cannot receive documents that do not exist, judgment should be
entered in favor of the defendants.

**V.    As a Matter of Law, EOUSA Withholdings and Redactions Were Proper Under
Applicable FOIA Exemptions**.

A.  EOUSA Properly Applied Exemption 5.

In response to Plaintiff's consolidated FOIA appeal, EOUSA decided to withhold one
page in full under Exemption 5 of FOIA because it would be privileged in civil litigation.  5
U.S.C. § 552(b)(5).  This one-page document is a letter from the U.S. Probation Office to the
AUSA and Victim Witness Coordinator seeking information about third party individuals and
losses incurred as a result of the conduct of Plaintiff.  After reviewing the letter, the Agency
determined that it constituted privileged, intra-agency communication made in the course of
prosecution, discussing evidentiary needs and procedures to be followed in that phase of the

11

prosecution, which is exempted from disclosure under Exemption 5.  See Boseker Decl. at ¶ 29

and Records Withheld - Document 2.

      Exemption 5 of FOIA exempts from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency."  5 U.S.C. § 552(b)(5).  The Supreme Court has interpreted

Exemption 5 as allowing an agency to withhold from the public documents which a private party

could not discover in litigation with the agency.  United States v. Weber Aircraft Corporation,

465 U.S. 792, 799 (1984); National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S.

132, 148 (1975).  Exemption 5 incorporates privileges that the Government enjoys under the

relevant statutory and case law in the pretrial discovery context.  Federal Trade Commission v.

Grolier, Inc., 462 U.S. 19, 26 (1983).  Agency documents that are not routinely discoverable in

civil litigation are exempted from disclosure under Exemption 5.  Id. at 27.

      It is well settled that Exemption 5 was intended to encompass the work product doctrine.

Id. at 20.  Announced in Hickman v. Taylor, 329 U.S. 495 (1947), the work product doctrine is

codified in the Federal Rules of Civil Procedure.  The applicable Fed. R. Civ. P. on the work

product doctrine provides that:

> [A] party may obtain discovery of documents and tangible things
> otherwise discoverable under subsection (b)(1) of this rule and
> prepared in anticipation of litigation or for trial by or for another
> party or by or for another party's representative (including the other
> party's attorney, consultant, surety, indemnitor, insurer, or agent)
> only upon a showing that the party seeking discovery has
> substantial need of the materials in the preparation of the party's
> case and that the party is unable without undue hardship to obtain
> the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3)(emphasis added).  Under FOIA, work product materials are not considered to be routinely available in litigation because they can only be released under Rule 26(b)(3) upon showings of substantial need and undue harm by the party seeking discovery. Grolier, 462 U.S. at 27.  In light of the information contained in the letter and its purpose, the Agency asserts that it would be protected from disclosure under Rule 26(b)(3) in civil litigation, thus making it exempt from disclosure under Exemption 5.

B.  EOUSA Properly Applied Exemptions 7(C) and 7(D).

FOIA does not require production of:

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7).  See also 5 U.S.C. § 552a (j)(2) (Privacy Act).  This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations.  See, e.g., U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 762-71 (1989) (privacy interests in a person's police arrest record); Computer Professionals for Social Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996).

In interpreting this exception, courts employ a balancing test weighing the privacy interests of the affected individuals against the public interest in disclosure of the information. See, e.g., Oguaju v. United States, 288 F.3d 448 (D.C. Cir. 2002), vacated 124 S.Ct. 1903 (2004), reinstated, 378 F.3d 1115 (D.C. Cir.), modified, 386 F.3d 273 (D.C. Cir. 2004); Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  Courts are quick to point out, however, that the

13

public interest in disclosure refers to "open[ing] agency action to the light of public scrutiny,"

Oguaju, 288 F.3d at 450 (quoting Reporter's Comm., 489 U.S. at 772), and "it does not include

helping an individual obtain information for his personal use," id. (quoting Mays v. DEA, 234

F.3d 1324, 1327 (D.C. Cir. 2000)).  The Oguaju court bluntly rejected the requestor's argument

that the public interest was served in releasing information that might aid him in his defense

against criminal charges: "Oguaju's personal stake in using the requested records to attack his

convictions does not count in the calculation of the public interest."  288 F.3d at 450 (emphasis

added).  Accord SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991) (public

interest in disclosure of third party identities is "insubstantial").

On the other side of the balance, privacy interests of individuals involved in criminal

investigations are routinely and properly accorded weight by the courts.  See, e.g., Reporter's

Committee, 489 U.S. at 762-71; Oguaju 288 F.3d at 451 (privacy interest of prison escapee);

Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995).

Exemption 7(D) provides protection for:

> records or information compiled for law enforcement purposes
> [which] could reasonably be expected to disclose the identity of a
> confidential source, including a State, local, or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation or by an agency conducting a lawful
> national security intelligence investigation, information furnished
> by a confidential source.

See 5 U.S.C. § 552(b)(7)(D) (2000).

When invoking Exemption 7(D), the agency must demonstrate, through the use of

reasonably detailed affidavits, that the information was compiled for a law enforcement purpose,

that an informant provided the information under either an express or an implied promise of

confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to

disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72

(1993).

In this case, EOUSA released a one-page document entitled "Case Review File," but

withheld the names of third parties to protect each from an unwarranted invasion of personal

privacy.  Plaintiff has failed to allege or provide any evidence to support any public interest in

disclosure of their names.  Thus, EOUSA properly applied Exemption 7(C).

EOUSA categorically applied Exemptions 7(C) and (D) to Plaintiff's February 26, 2004,

request wherein he sought records related to "confidential informants."  See Boseker Decl. at n. 1

and Exhibit D.[2]  This sort of categorical application of the balancing test is favored by courts

where the nature of the request so clearly fits into a FOIA exemption.  See, e.g., SafeCard

Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991) (quoting Reporters' Committee,

489 U.S. at 776).  This is particularly so in cases where the agency properly used a Glomar

---

[2]  Where the agency responds that it can neither confirm nor deny the existence of
responsive records courts do not require a detailed listing of the responsive records, but instead
require a publicly filed affidavit or declaration explaining, in as much detail as possible, why the
"Glomar" response is necessary to support of the agency's claim of a FOIA exemption from
release, without itself violating the third parties' privacy.  See Burke v. U.S. Dep't of Justice,
1999 WL 1032814 (D.D.C. Sept. 30, 1999) (citing Enzinna v. U.S. Dep't of Justice, 1997 WL
404327, *2 (D.C. Cir. 1997); Wheeler v. CIA, 2003 WL 21675312, *5 (D.D.C. June 4, 2003)
(quoting Phillippi v. CIA, 546 F.2d 1325 (D.C. Cir. 1981)).  See generally Minier v. Central
Intelligence Agency, 88 F.3d 796, 800 (9th Cir. 1996) (approving use of Glomar response where
agency concession that records existed would itself provide the information that the exemption
seeks to protect); Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 894 n.8 (D.C. Cir.
1995) (same); Hunt v. Central Intelligence Agency, 981 F.2d 1116, 1118 (9th Cir. 1992);
Phillippi, 655 F.2d 1325 (first case authorizing such response, named after a secret U.S.
government ocean vessel, the Hughes Glomar Explorer).

response.  See, e.g., Oguaju, 288 F.3d at 450-51; Computer Professionals, 72 F.3d at 904; Nation

Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); Burke v. U.S.

Dep't of Justice, 1999 WL 1032814, *5 (D.D.C. Sept. 30, 1999).  Although the court in Nation

Magazine indicated that categorical assertions of Exemption 7(C) to support Glomar responses

has its "limits," 71 F.3d at 885, the court permitted such categorical responses when "the range of

circumstances included in the category 'characteristically support[s] an inference' that the

statutory requirements are satisfied[.]"

On these facts, there can be but one inference drawn—that Plaintiff's request for

information regarding confidential informants falls squarely within Exemptions 7(C) and 7(D) so

should not be disclosed.  It bears noting that the fact that the requester might be able to figure out

the individuals' identities or that the identities have been disclosed elsewhere, or that the

requester is aware of the particular investigations does not diminish the privacy interests of the

third parties.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990); Weisberg v. Dep't of Justice,

745 F.2d 1476, 1491 (D.C. Cir. 1984); Taylor v. U.S. Dep't of Justice, 268 F. Supp. 2d 34, 38

(D.D.C. 2003).

## VI.    As A Matter Of Law, DEA's Withholdings And Redactions Were Proper Under The Privacy Act And Applicable FOIA Exemptions.

A.    The Records Are Exempt From The Privacy Act Disclosure Provisions (j)(2).

The contents of plaintiff's criminal investigation case file are exempt from the Privacy

Act's disclosure provision.  Subsection (j)(2) of the Privacy Act allows an agency by regulation,

to exempt from mandatory disclosure:

> records maintained by an agency or component thereof which
> performs as its principal function any activity pertaining to the

16

> enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of ...(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

Accordingly, DEA investigatory records are exempt from disclosure pursuant to Exemption (j)(2) of the Privacy Act, 5 U.S.C. § 552a(j)(2) in conjunction with 28 C.F.R. § 16.98. See Wassom Decl. at ¶ 32. Although access to the records was denied under the Privacy Act, they have been processed under the access provisions of the FOIA.

B.    DEA Properly Applied Exemption 2 [Internal Agency Rules and Practices]

Title 5, United States Code, Section 552 (b)(2) (hereinafter Exemption 2) exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). DEA has asserted Exemption 2 of the FOIA as to "violator identifiers," contained within the pages released to the plaintiff. "Violator codes" include: the Geographical Drug Enforcement Program (G-DEP) Codes, NADDIS numbers of third parties, and informant identifier codes. See Wassom Decl. at ¶¶ 50-52.

Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Department of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); National Treasury Employees Union v. United States Custom Service, 802

17

F.2d 525, 528-30 (D.C. Cir. 1986); <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 670

F.2d 1051, 1073-74 (D.C. Cir. 1981).

DEA has asserted Exemption (b)(2) of FOIA only as to the G-DEP codes, NADDIS

numbers and informant identifier codes contained in the pages released to the plaintiff and

identified in the <u>Vaughn</u> index attached as Exhibit W.  Exemption 2 of the FOIA exempts from

mandatory disclosure records "related solely to the internal personnel rules and practices of an

agency."  5 U.S.C. § 552 (b)(2).   The information need not be actual rules or practices; agencies

can invoke Exemption 2 for matters *related* to rules and practices as well.  <u>Department of the Air

Force v. Rose</u>, 425 U.S. 352, 369 (1976) (emphasis added).  Exemption 2 envelops two discrete

categories of information.  <u>Schiller v. NLRB</u>, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  They

include (a) internal matters of a relatively trivial nature (sometimes referred to as "low 2"

information); and (b) more substantial internal matters, the disclosure of which would risk

circumvention of a legal requirement (sometimes referred to as "high 2" information).  <u>Id</u>.  The

Supreme Court construed Exemption 2 to protect internal agency matters so routine or trivial that

they could not be "subject to . . . a genuine and significant public interest."  <u>Rose</u>, 425 U.S. at

369.  As such, Exemption 2 relieves agencies of the burden of assembling and providing access

to any "matter in which the public could not reasonably be expected to have an interest."  <u>Id.</u> at

369-70.

A variety of information qualifies as predominantly internal under Exemption 2.  <u>See

PHE, Inc. v. United States Dept. of Justice</u>, 983 F.2d 248, 251 (D.C. Cir. 1993) (exempting

general guidelines for conducting investigations).  This includes information pertaining to

violator and informant codes that could lead to the impairment of DEA investigations.

Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989)

("The public has no legitimate interest in gaining information that could lead to the impairment

of DEA investigations.")

The DEA properly invoked Exemption (b)(2) to withhold violator identifiers and

informant identifier codes.  The DEA investigative case files include "violator identifiers".

These identifiers are part of DEA's internal system of identifying individuals and information.

There is no public interest in the release of these codes.  See Wassom Decl. at ¶ 50.

G-DEP codes are assigned to all DEA cases at the time the case file is opened and

indicate the classification of the violator, the types and amount of suspected drugs involved, the

priority of the investigation and the suspected location and scope of criminal activity.  See

Wassom Decl. at ¶ 50(a).  The release of such codes would help identify the particular priority

given to narcotic investigation, types of criminal activities involved and violator ratings.

Notably, suspects could decode this information and change their pattern of drug trafficking in an

effort to respond to what they determined DEA knows about them and/or avoid detection and

apprehension.  As disclosure of these codes could thwart the DEA's investigative and law

enforcement efforts, their withholding under exemption (b)(2) is appropriate.  Id.

NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug

violators known to DEA.[3]  See Wassom Decl. at ¶ 50(b).  Each number is unique and is assigned

to only one violator within the DEA NADDIS system.  Id.  Knowledge of the NADDIS number

provides a means of determining details of the drug violations of the subject as well as personal

_____

[3]The NADDIS system is exempt from the access provisions of the Privacy Act, 5 U.S.C.
§  552a(j)(2); 28 C.F.R. 16.98.

information about any third parties identifiable with the violator.  Id.

Informant identifier codes are assigned to DEA and other law enforcement agency

cooperating individuals.[4]  These codes are personal identifiers that were sometimes used in place

of names in all DEA reports, memoranda and other internal correspondence.  See Wassom Decl.

at ¶ 50(c).  Informant identifier codes provide sensitive information about individuals who

cooperate with DEA and other law enforcement agencies in carrying out its law enforcement

functions.[5]  See id.  Thus, the codes are exempted under (b)(2) in conjunction with Exemption

(b)(7)(C).

       C.      DEA Properly Applied Exemption 7(C) [Law Enforcement – Personal Privacy]

As discussed above in Section III, B, Exemption 7(C) of the FOIA exempts from

mandatory disclosure information compiled for law enforcement purposes when disclosure

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(7)(C).  "[T]he term 'law enforcement purpose' is not limited to criminal

investigations but can also include civil investigations and proceedings in its scope."  Mittleman

v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S.

1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982).  When, however,

a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do

like claims by other agencies."  Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir.

1987), citing Pratt, 673 F.2d at 418.  A criminal law enforcement agency must simply show that

---

    [4]  Cooperating individuals are otherwise known as confidential sources or confidential informants or coded informants.

    [5]Exemptions  (b)(7)(C) and (b)(7)(D) were used in conjunction with (b)(2) to withhold these identities.

"the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" <u>Keys</u>, 830 F.2d at 340, quoting <u>Pratt</u>, 673 F.2d at 421.

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. <u>See</u>, <u>e.g.</u>, <u>U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749, 776-780 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' <u>Department of Air Force v. Rose</u>, [425 U.S. 352, 372 (1976)], rather than on the particular purpose for which the document is being requested." <u>Reporter's Committee</u>, 489 U.S. at 772 (internal quotation marks omitted). Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." <u>Id</u>. at 775. That public interest is to "shed[] light on an agency's performance of its statutory duties." <u>Id</u>. at 772. The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." <u>Perrone v. FBI</u>, 908 F. Supp. 24, 26 (D.D.C. 1995), citing <u>Senate of Puerto Rico v. Department of Justice</u>, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant"

that matters.  Brown v. FBI, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest relevant

for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about

what their government is up to.'"  Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C.

Cir.1992) (quoting Reporters Committee, 489 U.S. at 773) (internal quotation marks omitted).

 The privacy interests of third parties mentioned in law enforcement files are "substantial," while

"[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is

insubstantial."  SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir.1991).  Our court

of appeals has held "categorically" that "unless access to names and addresses of private

individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to

confirm or refute compelling evidence that the agency is engaged in illegal activity, such

information is exempt from disclosure."  SafeCard Services, 926 F.2d at 1206.

        Exemption 7(C) consistently has been held to protect the identities of suspects and other

persons of investigatory interest who are identified in agency records in connection with law

enforcement investigations.  Reporters Committee, 489 U.S. at 780; Computer Professionals for

Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong

interest of individuals, whether they be suspects, witnesses, or investigators, in not being

associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v.  Dept.  of

Justice, 906 F.2d 779, 781 (D.C. Cir.  1990)).  Indeed, an agency may categorically assert

Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law

enforcement files in such a way as to associate them with criminal activity.  Reporters

Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-

896 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

22

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Department of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Department of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

Here, the records are criminal law enforcement investigatory records, some of which contain names, addresses and other identifying information that reveal the identity of and disclose personal information about individuals who were witnesses or otherwise involved or associated with the plaintiff. See Wassom Decl. at ¶ 55.

DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act) which authorizes DEA to enforce the Act through the investigation of incidences involving the trafficking in controlled substances, dangerous drugs and precursor chemicals. The Act also authorizes DEA to investigate the violators who operate at interstate and international levels; to seize and forfeit assets derived from, traceable to, or intended to be used for illicit drug trafficking, to cooperate with counterpart agencies abroad and in that regard to exchange information in support of drug traffic prevention and control. See Wassom Decl. at ¶ 53.

The records deemed responsive to the plaintiff's FOIA request are criminal investigative records. The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties. See Wassom Decl. at ¶ 54. 5 U.S.C. § 552 (b)(7)(C) sets forth

23

an exemption for records or information compiled for law enforcement purposes the disclosure

of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

Many of the documents in this file contain names and addresses and other identifying

information which would reveal the identity of and disclose personal information about

individuals who were involved or associated with the plaintiff.  The individuals are protected

from the disclosure of their identities.  See Wassom Decl. at ¶ 55.

      In making the determination to withhold this information, the DEA attempted to balance

the individuals' privacy interests against any discernible public interest in disclosure of the

individuals' identities.  In this instance, the privacy interests outweighed any potential public

interest.  Thus, disclosure of certain identities would be an unwarranted invasion of their personal

privacy.  See Wassom Decl. at ¶ 56.   The public interest in disclosure of the information is

determined by whether the information in question would inform the plaintiff or the general

public about DEA's performance of its mission to enforce federal criminal and Controlled

Substance Act statutes and/or how DEA conducts its internal operations and investigations.  See

Wassom Decl. at ¶ 57.

      The identities of  government employees, including DEA Special Agents, ATF Special

Agents,  a DEA chemist, and  DEA evidence technicians, were withheld.  Releasing their

identities and information pertaining to these individuals would place each of these persons in

such a position that they may suffer undue invasions of privacy, harassment and humiliation from

disclosure of their identities in a criminal law enforcement investigatory file.  See Wassom Decl.

at ¶ 58.  These persons were assigned to handle tasks relating to the official investigation into the

criminal activities of the plaintiff.  See Wassom Decl. at ¶ 59.  They were, and possibly still are,

in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Id. Moreover, there is no public interest to be served by releasing the identities of DEA agents, ATF agents, or DEA support staff members. Id.

The names of task force and local law enforcement officers are also withheld. The identities of the task force and local law enforcement officers are withheld for the same reasons as those asserted for the withholding of the identities of DEA Special Agents. See Wassom Decl. at ¶ 60.

   D.    DEA Properly Applied Exemption 7(D) [Confidential Sources and Information by Confidential Sources]

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure: could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source. 5 U.S.C. § 552 (b)(7)(D). Exemption 7(D)'s "paramount objective" " is to keep open the Government's channels of confidential information." Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).[6]

---

   [6] The term "confidential source" is very broad. See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp.

As noted above in Section III, B, when invoking Exemption 7(D), the agency must demonstrate, through the use of reasonably detailed affidavits, that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993).

Law Enforcement purpose.  As previously explained under Exemption 7(C) , "the term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987), citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'"  Keys, 830 F.2d at 340, quoting Pratt, 673 F.2d at 421.

Confidentiality.  If an individual has not been given an express promise of confidentiality,

---

705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

the agency may demonstrate that a source has been given an <u>implied</u> promise of confidentiality

based upon the circumstances of the case. <u>Landano</u>, 508 U.S. at 179-80. The government may

establish implied assurances of confidentiality by describing "generic circumstances in which an

implied assurance of confidentiality fairly can be inferred." <u>Id</u>. at 179. For example, paid

informants and those who only communicate "'at locations and under conditions which assure

the contact will not be noticed' . . . justify the inference." <u>Id</u>.

The Court in <u>Landano</u> stressed two factors to be considered in determining whether an

implied promise of confidentiality exists: "the nature of the crime investigated and the witness'

relation to it." <u>Id</u>. at 181. In applying these factors, a key consideration is the potential for

retaliation against the source. <u>Id</u>. at 179-180; <u>see also</u>, <u>Williams v. FBI</u>, 69 F.3d 1155, 1159

(D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were

serious and violent and sources were "sufficiently close to" targets of investigation); <u>Hale v.</u>

<u>Dept. of Justice</u>, 99 F.3d 1025, 1031 (10th Cir. 1996).

<u>Information Exempted</u>. Once the agency has demonstrated that information was given by

a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other

information as well. The first clause of Exemption 7(D) not only protects obviously identifying

information, such as an informant's name and address, but also all information which would tend

to reveal the source's identity. <u>Pollard v. FBI</u>, 705 F.2d 1151, 1155 (9th Cir. 1983). <u>See also</u>

<u>Birch</u>, 803 F.2d at 1212 (protecting identity of third-party who acted as intermediary for

confidential source); <u>Stone v. Defense Investigative Serv.</u>, 816 F. Supp. 782, 788 (D.D.C. 1993)

(protecting "information so singular that to release it would likely identify the individual"); <u>Doe</u>

<u>v. U.S. Dept. of Justice</u>, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to

individual investigated, agency must protect "even the most oblique indications of identity").

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a balancing of public and private interests.  Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure").  Therefore, "once the agency receives information from a "'confidential source'" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'"  Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)).  Thus, the second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.  Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source.  Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

Waiver of confidentiality.  Once an express or implied promise of confidentiality has been established, it is extremely difficult to overcome.  In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'"  Parker, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).  Alternatively, a waiver can be shown by prior

28

disclosure through authorized channels.  This requires the requester to show both that "'the exact information given to the [law enforcement authority] has already become public, and the fact that the informant gave the same information to the [law enforcement authority] is also public.'" Parker, 934 F.2d at 378, quoting Dow Jones & Co., 908 F.2d at 1011.  "The mere fact that a confidential informant has testified at trial does not waive Exemption 7(D) protection for the identity of the confidential source or information furnished by that source."  Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997), citing Parker, 934 F.2d at 379-80.

        DEA has adequately justified its invocation of (b)(7)(D) concerning one responsive page. See Wassom Decl. at ¶¶ 63-64.  DEA has claimed this exemption with respect to the interaction of a coded informant with an undercover DEA agent and a third party.  See Wassom  Decl. at ¶ 64.  Coded informants are those individuals who have a continuing cooperative association with DEA.  These individuals are expressly assured confidentiality in their identities and the information they provide to DEA.  They are also assured that their names will not be used in DEA investigative materials.  See Wassom Decl. at ¶ 63; Vaughn index (Exhibit W) at page 104.

        E.      DEA Properly Applied Exemption 7(F) [Safety of Law Enforcement Personnel]

        As amended, Exemption 7(F) of the FOIA provides protection to "any individual" when disclosure of information about him "could reasonably be expected to endanger [his] life or physical safety."  5 U.S.C. § 552(b)(7)(F).  Currently, courts have held that the coverage provided by the exemption can afford protection of the names and identifying information of federal employees and third persons who may be unknown to the requester in connection with a particular law enforcement matter.  Isley v. Executive Office for United States Attorneys, No. 96-

0123, slip op. at 8-9 (D.D.C. Mar. 27, 1997) (upholding agency's nondisclosure of identifying

information about individuals who provided information during murder investigation due to a

reasonable likelihood that disclosure would threaten their lives), appeal dismissed, No. 97-5105

(D.C. Cir. Sept. 8, 1997).  This protection can also be extended to the identities of informants

who have been threatened with harm.  Housley v. FBI, No. 87-3231, slip op. at 7 (D.D.C. Mar.

18, 1988).  Moreover, Exemption 7(F)'s protection has also been held to remain applicable even

after a law enforcement officer subsequently retired.  Moody v. DEA, 592 F. Supp. 556, 559

(D.D.C. 1984).

        In this instance, the names and identities if DEA Special Agents, Supervisory Agents and

other law Enforcement officers have been deleted in accordance with exemption 7(F).  See

Wassom at ¶ 65.  DEA Special Agents and Supervisory Agents, as well as members of other law

enforcement entities are frequently called upon to conduct a wide variety of investigations

including sensitive and dangerous undercover operations. Id. at ¶ 66.

        Special Agents and other law enforcement personnel routinely approach and associate

with violators in a covert capacity.  Id. at ¶ 67.  Many of those violators are armed and many have

known violent tendencies.  It has been the experience of DEA that the release of Special Agents'

identities has, in the past, resulted in several instances of physical attacks, threats of harassment

and attempted murder of undercover and other DEA Special Agents.  Id.  It may therefore be

reasonably anticipated that other law enforcement officers would become targets of similar abuse

if they were identified as participants in DEA's enforcement operations.  Id.

        In addition, if the names of Special Agents and other law enforcement officers were

released pursuant to the Freedom of Information Act, DEA would consequently be releasing this

data to the public realm.  See Wassom Decl. at ¶ 68.  DEA considers it to be within the public

interest not to disclose the identity of Special Agents so that they may effectively pursue their

undercover and investigatory assignments.  Id.  These assignments are necessary elements in

support of DEA's objective—the suppression of the illicit trafficking in narcotic and dangerous

drugs.  Public disclosure of the identities of investigatory personnel would have a detrimental

effect on the successful operation of DEA as well as risk harassment and danger to its agents and

other law enforcement personnel.  Id.  Exemption 7(F) was invoked in this case to protect all

other individuals mentioned who could be potential witnesses or provided information.  The

exemption was used in conjunction with Exemption (b)(7)(C).

## VII.    Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte."  Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022,

1028 (D.C. Cir. 1999).  The FOIA requires that if a record contains information that is exempt

from disclosure, any "reasonably segregable" information must be disclosed after deletion of the

exempt information unless the non-exempt portions are "inextricably intertwined with exempt

portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566

F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements".  Mead Data,

566 F.2d at 261.  The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed.  Id.  All that is required is that the

31

government show "with 'reasonable specificity'"" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." Mead Data, 566 F.2d at 261, n.55.

In this case, EOUSA and DEA have demonstrated with reasonable specificity that all

reasonably segregable information has been released. The declarations of John F. Boseker and

Leila I. Wassom describe in detail the non-segregable information, and the reasons why partial

releases cannot be made. See Boseker Decl. at ¶ 42; Wassom Decl. at ¶¶ 69-76. EOUSA and

DEA have plainly met their burden here.

## VIII. CONCLUSION

For the foregoing reasons, defendants respectfully request entry of summary judgment. A

proposed order setting forth the relief requested is attached.

Respectfully submitted,

    s/
_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

    s/
_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

    s/
_____
KAREN L. MELNIK, D.C. BAR # 436451
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

(202) 307-0338

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 10, 2006, I served a copy of the foregoing

Defendants' Motion for Summary Judgment, a supporting memorandum, and a proposed Order

by first class mail, postage pre-paid, to the following:


Jose M. Chavez-Arellano
Register No. 93054-079
P.O. Box 9000, FCI Seagoville
Seagoville, Texas 75159


_____
KAREN L. MELNIK, D.C. Bar #436451
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-0338