UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHAVEZ-ARELLANO,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT<br>  OF JUSTICE et al.,<br><br>    Defendants. | Civil Action No. 05CV2503 (RMC) |

**STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Rule 7(h), Defendant respectfully submits this statement of material facts as to which it contends there is no genuine dispute.

**A.  Plaintiff's FOIA Request To The FBI**

1. By routing slip dated June 21, 2002, the Department of Justice, Justice Management Division referred to the FBI an FOIPA request they had received from the plaintiff.  See Declaration of David M. Hardy ("Hardy Decl.") at ¶ 5 and Exhibit A.  Plaintiff asked for "File# M-6000103 DEA LAB ANALYSIS OF METHAMPHETAMINE AND FINGERPRINT ANALYSIS."  See id.  Plaintiff also stated "consider this as a first-party request under the FOIA."  Included with the request was a certification of identity form which contained his full name, federal prisoner identification number, date and place of birth, and current address.  See id.

2. In a letter dated July 2, 2002, FBIHQ acknowledged receipt of the FOIPA request and advised plaintiff that his request for information pertaining to himself had been assigned

      FOIPA number 0964047-000. <u>See</u> Hardy Decl. at ¶ 6 and Exhibit B. The request for File # M-6000103 was assigned FOIPA # 964048 although the FBI's February 2, 2004, letter did not reflect that. <u>See</u> <u>id.</u>

3. By letter dated July 17, 2002, FBIHQ advised plaintiff that a search of the FOIPA automated indices to the Central Records System ("CRS") files at FBIHQ located no records responsive to his FOIPA request for records pertaining to himself. <u>See</u> Hardy Decl. at ¶ 7 and Exhibit C. Plaintiff was informed that the automated indices includes all records created since January 1, 1958 in security, applicant and administrative matters, as well as all records created since January 1, 1973 in criminal matters. <u>See</u> <u>id.</u> Further, if he thought records existed prior to those dates, plaintiff was advised to request a second search. FBIHQ also advised plaintiff of his right to file an administrative appeal of this "no records" response with the U.S. Department of Justice, Office of Information and Privacy ("DOJ OIP"). <u>See</u> <u>id.</u>

4. In a letter dated August 7, 2002, FBIHQ advised plaintiff that a search of the automated indices to the CRS files at FBIHQ located no records responsive to his FOIPA request for records concerning "DEA LAB ANALYSIS OF METHAMPHETAMINE AND FINGERPRINT ANALYSIS." <u>See</u> Hardy Decl. at ¶ 8 and Exhibit D. Plaintiff was informed that the automated indices includes all records created since January 1, 1958 in security, applicant and administrative matters, as well as all records created since January 1, 1973 in criminal matters. <u>See</u> <u>id.</u> If he thought records existed prior to those dates, plaintiff was advised to request a second search. FBIHQ informed plaintiff of his right to file an administrative appeal of this "no records" response with the U.S. Department of

    Justice, Office of Information and Privacy ("DOJ OIP"). See id. Plaintiff was also advised that this request had been assigned FOIPA Number 0964048-000. See id.

5.  By letter dated January 7, 2004 to the Assistant Director of the Criminal Investigative Division at FBIHQ, plaintiff submitted an FOIPA request for access to "Each and every record related to" himself in agency files. See Hardy Decl. at ¶ 9 and Exhibit E. Along with this letter, plaintiff provided a Certification of Identity form which contained his full name, federal prisoner identification number, Social Security number, date and place of birth, and address. See id.

6.  In a letter dated February 2, 2004, FBIHQ advised plaintiff that a subsequent search of the automated indices to the CRS files at FBIHQ located no records responsive to his FOIPA request for access to records concerning himself, with the exception of his prior FOIPA correspondence. See Hardy Decl. at ¶10 and Exhibit F. In this letter, FBIHQ advised plaintiff of his right to file an administrative appeal of this "no records" response with DOJ OIP. See id.

7.  By letter dated January 7, 2004 to the Houston Field Office ("HOFO"), plaintiff submitted an FOIPA request for "Each and every record related to himself in agency files." See Hardy Decl. at ¶ 11 and Exhibit G. Along with this letter, plaintiff provided a Certification of Identity form which contained his full name, federal prisoner identification number, Social Security number, date and place of birth, and address. See id.

8.  In a letter dated January 20, 2004, FBIHQ acknowledged receipt of plaintiff's FOIPA request to the HOFO and advised plaintiff that a search of the automated indices to the

CRS files at HOFO located no records responsive to his request. See Hardy Decl. at ¶ 12 and Exhibit H. FBIHQ informed plaintiff of his right to file an administrative appeal of this "no records" response with the DOJ OIP. See id. Plaintiff was also advised that this request had been assigned FOIPA Number 0990239-000. See id.

9. By letter dated January 7, 2004 to the Assistant Director of the Laboratory Division at FBIHQ, plaintiff submitted an FOIPA request for "Any and all fingerprint analysis and/or fingerprint record in your agency files." See Hardy Decl. at ¶ 13 and Exhibit I. Plaintiff also requested "that you search other branches and offices for the requested records." See id. Along with this letter, plaintiff provide a Certification of Identity form which contained his full name, federal prisoner identification number, Social Security number, date and place of birth, and address. See id.

10. In a letter dated March 17, 2004, FBIHQ advised plaintiff that a search of the automated indices to the CRS located no records responsive to his FOIPA request for access to records concerning himself. See Hardy Decl. at ¶ 14 and Exhibit J. Plaintiff was also advised that his request had been assigned FOIPA Number 0993731-000. See id.

11. By letter to DOJ OIP dated August 21, 2004, plaintiff appealed FOIPA requests 0990239-000, 964047, and 0993731-000. See Hardy Decl. at ¶ 15 and Exhibit K. Plaintiff stated he believed the FBI had records responsive to his request. See id. By letters dated September 27, 2004, DOJ OIP notified plaintiff that his administrative appeals had been received. See Hardy Decl. at ¶ 16 and Exhibit L.

12. By letters dated February 7, 2005, plaintiff was advised that after careful consideration of his appeals numbered 04-2780 and 04-2781, OIP affirmed the FBI's action on his FOIPA

4

  requests to FBIHQ and the Houston Field Office. <u>See</u> Hardy Decl. at ¶ 17 and Exhibit M. By separate letter dated February 7, 2005, plaintiff was advised that after careful consideration of his appeal numbered 04-2782, OIP affirmed the FBI's action on his FOIPA request to the FBI Laboratory Division. <u>See</u> Hardy Decl. at ¶ 18 and Exhibit N.

13.  In response to plaintiffs requests, FBIHQ searched the Central Records System ("CRS") using plaintiff's name in order to locate any main investigatory files maintained at HQ and HOFO. <u>See</u> Hardy Decl. at ¶ 25. A search of the CRS by using the name "Jose Miguel Chavez-Arellano" would cover a thirteen-way phonetic breakdown of the name. <u>See</u> <u>id.</u> For example, this search would locate records using the phonetic sounds of each last and first name relating to the following names: "Arellano, Jose Miguel Chavez"; "Arellano, Jose Miguel"; "Arellano, Jose M."; "Arellano, Jose"; "Arellano, J. Miguel"; "Arellano, J. M.."; "Arellano, Miguel"; "Chavez, Jose Miguel"; "Chavez, Jose M."; "Chavez, Jose"; "Chavez, J. Miguel"; "Chavez, J. M."; and "Chavez, Miguel." <u>See</u> <u>id.</u> FBIHQ also used plaintiffs date of birth and Social Security number to facilitate the identification of responsive records. <u>See</u> <u>id.</u> This search failed to locate any main investigatory files responsive to plaintiff's request. <u>See</u> <u>id.</u> File #M6000103 is not an FBI file number, however, any information relating to plaintiff and "DEA LAB ANALYSIS OF METHAMP1 ETAMINE AND FINGERPRINT ANALYSIS" would have surfaced as a result of the search of his name in the CRS. <u>See</u> <u>id.</u>

**B. Plaintiff's FOIA Request To EOUSA**

 **FOIA No. 04-150**

14.  On January 15, 2004, EOUSA received a letter dated January 7, 2004, from Mr.

Chavez-Arellano. This letter sought all records on himself, under the FOIA/PA maintained by the USAO/Southern District of Texas ("USAO/SDTX"). See Declaration of John F. Boseker ("Boseker Decl.") at ¶ 6 and Exhibit A. By letter dated February 5, 2004, EOUSA acknowledged to Mr. Chavez-Arellano that the letter had been received and assigned FOIA No. 04-150. See Boseker Decl. at ¶ 7 and Exhibit B. The letter further advised him that a request for "all information about myself in criminal case files" were usually "Project Requests" that could take up to nine months to process. See id. The option of narrowing his request to specific records, and an explanation of fees in connection with FOIA requests was also set forth. See id.

15. On February 26, 2004, EOUSA received a letter from Mr. Chavez-Arellano, responding to Exhibit B, in which he stated that this was not a "project request," and limited EOUSA's search to all fingerprint records in his criminal case (5:00-CR-000355), searching all other branches (within the USAO), and a Vaughn Index to all of his records. See Boseker Decl. at ¶ 8 and Exhibit C.

16. Also, on February 26, 2004, EOUSA received another letter from Mr. Chavez-Arellano dated February 16, 2004. See Boseker Decl. at n. 1 and Exhibit D. This letter sought records related to "confidential informants" in the same criminal case, and those of a specifically named individual, and again, a Vaughn Index to all records. Id. In reviewing the FOIA file in the course of preparing a declaration, Mr. Boseker discovered that EOUSA had not yet responded to this letter. Mr. Boseker's declaration puts Mr. Chavez-Arellano on notice that as to the records of these third party individuals, EOUSA is categorically applying FOIA exemptions (b)(7)(C) and (b)(6) to protect all such persons

6

from unwarranted invasion of personal privacy. See id. In addition, FOIA exemption (b)(7)(D) is categorically applied to protect identified confidential informants from disclosure that would likely lead to harm. The categorical application of these exemptions were made without proceeding to search for records, which EOUSA asserts are not disclosable, and arguably cannot confirm or deny their existence, as to one or more persons who were not referred to specifically by this request letter.

17. By letter dated July 6, 2004, EOUSA notified Mr. Chavez-Arellano that it had located records in response to his request, and was sending 8 pages in full ("respond in full" hereinafter "RIF") and 1 page with portions withheld ("respond in part" hereinafter "RIP"). Mr. Chavez-Arellano was advised that EOUSA continued to withhold 1 page in full ("withhold in full" hereinafter "WIF"), and that public records were available upon written request, subject to possible copying fees. See Boseker Decl. at ¶ 10 and Exhibit F. This same letter notified Mr. Chavez-Arellano that EOUSA had applied FOIA exemptions 5 U.S.C. §552 (b)(5) and (b)(7)(C), and PA exemption 5 U.S.C. §552a(j)(2) to withhold material. See Boseker Decl. at ¶ 11 and Exhibit F. This letter also notified Mr. Chavez-Arellano that EOUSA had referred a one page document to the DEA for review and to make determinations under the FOIA/PA, and correspond directly with him; he was also advised that he could directly write to the DEA for fingerprint records, and provided with the address to do so. See id.

**FOIA No. 04-184**

18. On January 21, 2004, EOUSA received a second letter from Mr. Chavez-Arellano dated January 10, 2004, in which he sought "each and every record maintained in the

agency's system of records related to the requester, including a Vaughn Index of each and every record concerning my files...." He also sought expedited treatment of his request. See Boseker Decl. at ¶ 14 and Exhibit G. EOUSA sent a letter acknowledging receipt on February 18, 2004, stating exactly the same information as set forth in paragraph 8 of Boseker Decl. and Exhibit B, and assigning FOIA number 04-184 to this request. See Boseker Decl. at ¶ 15 and Exhibit H.[1]

19. On June 24, 2004, EOUSA notified Mr. Chavez-Arellano that due to the backlog of requests his request was being handled in the order of receipt and would be processed in the normal course of events. See Boseker Decl. at ¶ 18 and Exhibit K. On July 6, 2004, in conjunction with Exhibit F, FOIA No. 04-150, EOUSA notified Mr. Chavez-Arellano that it was combining both files into 04-150, and closing 04-184 as a duplicate. See Boseker Decl. at ¶ 19 and Exhibit L.

20. By letter dated August 17, 2004, Mr. Chavez-Arellano filed an appeal with the OIP regarding EOUSA's actions in both numbered FOIA files. See Boseker Decl. at ¶ 20 and Exhibit M. OIP responded by letter dated September 9, 2004, which notified Mr. Chavez-Arellano of the letter's receipt, and assignment of appeal numbers 04-2738 and 04-2739, (FOIA Nos. 04-150 and 04-184 respectively), and which also advised him that the appeal would be reviewed in the approximate order it was received. See Boseker Decl. at ¶ 20 and Exhibit N.

21. By letter dated January 10, 2005, OIP notified Mr. Chavez-Arellano that it had

---

[1] EOUSA also sent another letter on February 18, 2004, denying Mr. Chavez-Arellano's request for expedited treatment, setting forth the reasons therefore, and providing him with his rights and means to appeal this determination. See Boseker Decl. at ¶ 15 and Exhibit I.

affirmed EOUSA's application of exemptions (b)(5) and (b)(7)(C) to the withheld records. He was also notified that specific records regarding fingerprints could be sought from the DEA, and that he should write directly to that agency. Finally, he was advised that EOUSA had consolidated his two requests and appeals into one case, FOIA No. 04-150. See Boseker Decl. at ¶ 21 and Exhibit O. In sum, EOUSA has withheld one page in part and one page in its entirety. See Boseker Decl. at ¶ 22.

22. All of the records reviewed by EOUSA in response to Mr. Chavez-Arellano's request(s) were located in the USAO/SDTX. The records are maintained in the Criminal Case File System (Justice/USA-007) and in the criminal case file U.S. v. Jose Chavez-Arellano, 00-CR-355. Mr. Chavez-Arellano (and others) were investigated, prosecuted, and convicted of violating narcotics-related statutes. See Boseker Decl. at ¶ 23.

23. Upon receipt of Mr. Chavez-Arellano's FOIA/PA request, a search to determine the location of any and all files relating to him was undertaken. See Boseker Decl. at ¶ The USAO/SDTX conducted a systematic search for the specific records, which Mr. Chavez-Arellano had identified. See id. The computer case tracking systems, PROMIS and LIONS, were used to determine all possible locations of responsive files. See id. The databases have fields for retrieval of information based on a defendant's name, USAO file jacket number, and district court case number. See id. After completing the computer search to determine all possible record locations in the Criminal and Asset Forfeiture Divisions, the FOIA contact for the USAO notified EOUSA that the only records located were contained in the aforesaid criminal case file. See id.

24. Following commencement of the above-captioned action, and after reviewing the

above-referenced FOIA files, Mr. Boseker asked the FOIA contact for the USAO to conduct a second search to ensure that all records were located and forwarded to our office for processing. See Boseker Decl. at ¶ 25. Mr. Boseker's review of Mr. Chavez-Arevello's correspondence and complaint as well as the file contents, in his view, necessitated clarifying apparent confusion in the handling of all. See id. The FOIA contact for the USAO advised Mr. Boseker that the policy of that office is to purge files once the defendant has been sentenced, and that agency records are usually returned to agents, and other non-public records and grand jury, shredded. See id. What generally remains are public records, which accounts for the small number of pages finally processed by EOUSA.

### C. Plaintiff's FOIA Request To DEA

**REQUEST 02-1370-F**

25. By letter dated December 4, 2001, the plaintiff requested "File # 6-000103 DEA Lab Analysis of Methamphetamine and Fingerprint Analysis." A copy of the plaintiff's letter dated December 4, 2001, is attached as Exhibit A to the Declaration of Leila I. Wassom ("Wassom Decl.") at ¶ 6..

26. By referral/action slip dated June 21, 2002, the Department of Justice, Justice Management Division (JMD), forwarded the plaintiff's request to DEA. See Wassom Decl. at ¶ 7. A copy of the JMD referral/action slip dated June 21, 2002, is attached as Exhibit B to Wassom Decl.

27. By letter dated July 25, 2002, DEA acknowledged the plaintiff's request and informed him that it would be handled in chronological order based on the date of its letter. The

       letter confirmed the plaintiff's obligation, that by filing the request, the plaintiff had implicitly agreed to pay all applicable fees up to $25.00.  See Wassom Decl. at ¶ 8.  A copy of the DEA letter dated July 25, 2002, is attached as Exhibit C to Wassom Decl.

28. By letter dated October 8, 2002, DEA released portions of 97 pages and one page in its entirety to the plaintiff.  See Wassom Decl. at ¶ 9.  Four pages were withheld in their entirety.  Information was withheld pursuant to Freedom of Information Act (FOIA) exemptions (b)(2), (b)(7)(C), (b)(7)(F), and Privacy Act (PA) exemption (j)(2).  See id.  The letter indicated that information was also withheld pursuant to FOIA exemption (b)(7)(D).  See id.  However, no information was withheld pursuant to that exemption.  By attached Comments Page, DEA informed the plaintiff that its records do not contain fingerprint analysis, and suggested that he contact the FBI for that information.  A copy of the DEA letter dated October 8, 2002, is attached as Exhibit D to Wassom Decl.

29. By letter dated March 26, 2003, the plaintiff requested "all records in agency files, including, but not limited, to...documents, reports, pictures, exhibits, memorandums, letters, summaries, handwritten notes, recordings, and all other information concerning this subject which is contained in your offices..."  See Wassom Decl. at ¶ 10.  A copy of the plaintiff's letter dated March 26, 2003, is attached as Exhibit E to Wassom Decl.

30. By letter dated March 27, 2003, the plaintiff appealed DEA's response to the Department of Justice, Office of Information and Privacy (OIP).  A copy of the plaintiff's letter dated March 27, 2003, is attached as Exhibit F to Wassom Decl.

31. By letter dated April 14, 2003, OIP acknowledged the plaintiff's appeal and notified him that it would be handled in approximate order of receipt.  A copy of the OIP letter dated

April 14, 2003, is attached as Exhibit G to Wassom Decl.

32. By letter dated July 14, 2003, OIP affirmed DEA's response, stating that DEA had correctly withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). A copy of the OIP letter dated July 14, 2003, is attached as Exhibit H to Wassom Decl.

**REQUEST 03-1078-F**

33. By letter dated April 17, 2003, addressed to DEA's South Central Laboratory, the plaintiff requested "any and all fingerprints and/or fingerprint analysis" regarding his criminal case and DEA lab file #6000103. See Wassom Decl. at ¶ 14. The plaintiff also requested an accounting of disclosures, and requested that the laboratory forward a copy of the request to the appropriate agency field offices. The plaintiff also requested that for any records not in DEA's possession "please advise me if those records were once in your possession and where they are now... If the records are somewhere else, please advise me when and where they were moved." See id. A copy of the plaintiff's letter dated April 17, 2003, is attached as Exhibit I to Wassom Decl.

34. By letter dated May 19, 2003, DEA denied the plaintiff's request for a fee waiver, informing him that the requested information was not likely to contribute significantly to public understanding of the government, as required for a fee waiver. See Wassom Decl. at ¶ 15. A copy of the DEA letter dated May 19, 2003, is attached as Exhibit J to Wassom Decl.

35. By letter dated May 27, 2003, the plaintiff enclosed a copy of his April 17, 2003, FOIA request, directing DEA to paragraph 13 of the request, in which he would be prepared to

pay the fee in the fee waiver request was denied. See Wassom Decl. at ¶ 16. A copy of the plaintiff's letter dated May 27, 2003, is attached as Exhibit K to Wassom Decl.

36. By letter dated July 9, 2003, DEA informed the plaintiff that it was unable to locate any responsive documents to his request for fingerprints/fingerprint analysis using the criminal case number he provided since DEA records are not indexed in that method. See Wassom Decl. at ¶ 17. DEA informed the plaintiff that the DEA file number he provided was queried and produced negative results as it also is not a DEA file number. See id. A copy of the DEA letter dated July 9, 2003, is attached as Exhibit L to Wassom Decl.

37. By letters dated January 7, 2004, addressed to DEA headquarters and to DEA's Laredo, Texas field division, the plaintiff requested "each and every record related to reqeustor (sic), Jose Miguel Chavez-Arellano in agency files. See Wassom Decl. at ¶ 18. I also request that you search other branches and offices for the requested records." Copies of the plaintiff's letters dated January 4, 2004, are attached as Exhibit M to Wassom Decl. The copy of the request sent to the Laredo field office was forwarded to DEA headquarters. Attached to the plaintiff's complaint as part of Exhibit F is a request letter to DEA's Houston, Texas field office also dated January 7, 2004. DEA has no record of receipt of the letter to the Houston field office. See Wassom Decl. at ¶ 18.

38. By letter dated January 10, 2004, addressed to the South Central Laboratory, the plaintiff again requested an accounting of disclosures, and again requested that for any records not in DEA's possession, "please advise me if those records were once in your possession and where they are now. See Wassom Decl. at ¶ 19. If the records are somewhere else, please advise me when and where they were moved." The plaintiff requested that DEA

  search other "branches and offices" for the requested fingerprint records, providing a DEA investigative file number, exhibit number, and three lab numbers. A copy of the plaintiff's letter dated January 10, 2004, is attached as Exhibit N to Wassom Decl.

39. By letter dated February 20, 2004, DEA informed the plaintiff that no further information other than that previously sent pursuant to his previous FOIA request was available to him, and that his request would be administratively closed. See Wassom Decl at ¶ 20. DEA informed the plaintiff that in order to receive information on fingerprint and analysis or fingerprint records, he must contact the FBI directly. A copy of the DEA letter dated February 20, 2004, is attached as Exhibit O to Wassom Decl.

**REQUEST 04-1588-P**

40. By letter dated July 6, 2004, the Executive Office for United States Attorneys (EOUSA) forwarded one page to DEA for processing and a direct response to the plaintiff. See Wassom Decl. at ¶ 21. Attached to the letter were copies of the plaintiff's request to EOUSA dated January 7, 2004 and EOUSA's response to the plaintiff. A copy of the EOUSA letter dated July 6, 2004, is attached as Exhibit P to Wassom Decl.

41. By letter dated August 5, 2004, DEA acknowledged the plaintiff's request and informed him that it would be handled in chronological order based on the date of its letter. See Wassom Decl. at ¶ 22. The letter confirmed the plaintiff's obligation, that by filing the request, the plaintiff had implicitly agreed to pay all applicable fees up to $25.00. A copy of the DEA letter dated August 5, 2004, is attached as Exhibit Q to Wassom Decl.

42. By letter dated August 24, 2004, DEA released portions of one page to the plaintiff. Information was withheld pursuant to FOIA exemptions (b)(7)(C) and PA exemption

(j)(2). See Wassom Decl. at ¶ 23. A copy of the DEA letter dated August 24, 2004, is attached as Exhibit R to Wassom Decl.

43. By letter dated September 4, 2004, the plaintiff appealed DEA's action, stating that he had "reliable information" to believe that DEA had additional records relating to his criminal case. See Wassom Decl. at ¶ 24. A copy of the plaintiff's letter dated September 4, 2004, is attached as Exhibit S to Wassom Decl.

44. By letter dated October 26, 2004, OIP acknowledged the plaintiff's appeal and informed him it would be handled in approximate order of receipt. See Wassom Decl. at ¶ 25. A copy of the OIP letter dated October 26, 2004, is attached as Exhibit T to Wassom Decl.

45. By letter dated December 16, 2004, OIP affirmed DEA's action, stating that DEA correctly withheld information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F). OIP informed the plaintiff that DEA's action was taken on the only record referred to it by EOUSA, and that if he would like DEA to conduct a search for other records concerning him, he must make a request directly to DEA. See Wassom Decl. at ¶ 26. A copy of the OIP letter dated December 16, 2004, is attached as Exhibit U to Wassom Decl.

**REMEDIAL ACTION TAKEN IN LITIGATION**

46. As stated above, the plaintiff has requested information from DEA's Laredo, Texas field office. No search of the Laredo field office was conducted by SARO. See Wassom Decl. at ¶ 27. In his Complaint, the plaintiff indicated that he had also requested information from DEA's Houston, Texas field office. Pursuant to these requests, on February 9, 2006, DEA contacted its Laredo and Houston, Texas field offices, requesting that

|     |     |
| --- | --- |
|     | searches of the field copies of the plaintiff's DEA investigative files be conducted, and any documents copies of which are not found in the DEA headquarters file be forwarded to CCA. See id. |
| 47. | On or about February 16, 2006, DEA received 41 pages and 101 photographs from its Laredo, Texas field office. See Wassom Decl. at ¶ 28. The Laredo field office is a division of the Houston field division, so the documents received constitutes the response from both locations. Ninety-three of the photographs were determined to be not responsive to the plaintiff's request. Copies of the eight responsive photographs were included on two of the pages, copies of four photographs on each page. See id. |
| 48. | By letter dated March 7, 2006, DEA released portions of 16 pages and 23 pages in their entirety. See Wassom Decl. at ¶ 29. Two pages were withheld in their entirety. Information was withheld pursuant to Freedom of Information Act (FOIA) exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(F), and Privacy Act (PA) exemption (j)(2). See id. A copy of the DEA letter dated March 7, 2006, is attached as Exhibit V to Wassom Decl. |

**ADEQUACY OF SEARCH**

|     |     |
| --- | --- |
| 49. | Investigative information about the plaintiff was reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. IRFS is a DEA Privacy Act System of Records that contains <u>all</u> administrative, general and investigative files compiled by DEA for law enforcement purposes. See Wassom Decl. at ¶ 30. |
| 50. | In his request, the plaintiff cited his criminal case number. As stated above, DEA does not use criminal case numbers to store and/or retrieve documents. See id. at ¶ 31. |
| 51. | DEA's law enforcement responsibility is the enforcement of Federal drug laws, including |

    the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq*. The Attorney General promulgated rules exempting the IRFS from the access provisions of the PA, pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R. § 16.98 (2005). <u>See</u> Wassom Decl. at ¶ 32.

52.     The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. <u>See</u> Wassom Decl. at ¶ 33. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth. <u>See id.</u>

53.     On July 24, 2002, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated December 4, 2001. <u>See</u> Wassom Decl. at ¶ 34. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. <u>See id.</u> Additional NADDIS queries were conducted on January 24, 2003, upon receipt of the plaintiff's FOIA request dated January 7, 2004, and on August 3, 2004, upon receipt of a referral of one page from EOUSA. No additional documents were located pursuant to the second and third NADDIS queries. <u>See id.</u>

54.     As a result of the NADDIS query, the EOUSA referral, and the results of the searches of DEA's Laredo, Texas and Houston, Texas field offices, 144 pages of material responsive to the plaintiff's requests to DEA and EOUSA were identified. <u>See id.</u> Portions of 114 pages and 24 pages in their entirety were released to the plaintiff. Six pages were

withheld in their entirety. See id. A Vaughn index detailing DEA's withholdings has been prepared, and it is attached as Exhibit W to Wassom Decl.

                    Respectfully submitted,

                    ___s/_____
                    KENNETH L. WAINSTEIN, D.C. BAR # 451058
                    United States Attorney

                    ___s/_____
                    R. CRAIG LAWRENCE, D.C. BAR # 171538
                    Assistant United States Attorney

                    ___s/_____
                    KAREN L. MELNIK, D.C. BAR # 436451
                    Assistant United States Attorney
                    United States Attorney's Office
                    Civil Division
                    555 4th Street, N.W.
                    Washington, D.C. 20530
                    (202) 307-0338