## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOSE M. CHAVEZ-ARELLANO,    )
    )
      Plaintiff,    )
    )
      v.    )
    )  **Civil Action No. 05-2503 RMC**
DEPARTMENT OF JUSTICE, <u>et al.</u>,    )
    )
      Defendants.    )
_____ )

## <u>DECLARATION OF LEILA I. WASSOM</u>

1.  I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to the Office of Chief Counsel, Administrative Law Section (CCA), DEA Headquarters, Washington, D.C. From August 1991 to June 2005, I was assigned to the Freedom of Information and Records Management Section, DEA Headquarters.

2.  I review for litigation purposes both the initially processed and appealed Freedom of Information Act (FOIA) and Privacy Act (PA) requests received by DEA. I have performed these duties at DEA since 1991.

3.  My duties require that I am familiar with the policies and practices of DEA regarding the processing and release of information requested under the FOIA/PA, and the application of the FOIA/PA and exemptions for which I have received formal and on the job training.

4. In preparing this declaration, I have read and am familiar with the complaint, in the above entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5. SARO is the DEA office responsible for responding to, the search for, and the processing and release of information requested under FOIA and PA. I am familiar with the policies, practices and procedures employed by SARO that relate to the search for, and the processing and release of information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE AND ADMINISTRATIVE ACTION

### REQUEST 02-1370-F

6. By letter dated December 4, 2001, the plaintiff requested "File # 6-000103 DEA Lab Analysis of Methamphetamine and Fingerprint Analysis." A copy of the plaintiff's letter dated December 4, 2001, is attached as Exhibit A.

7. By referral/action slip dated June 21, 2002, the Department of Justice, Justice Management Division (JMD), forwarded the plaintiff's request to DEA. A copy of the JMD referral/action slip dated June 21, 2002, is attached as Exhibit B.

-2-

8. By letter dated July 25, 2002, DEA acknowledged the plaintiff's request and informed him that it would be handled in chronological order based on the date of its letter. The letter confirmed the plaintiff's obligation, that by filing the request, the plaintiff had implicitly agreed to pay all applicable fees up to $25.00. A copy of the DEA letter dated July 25, 2002, is attached as Exhibit C.

9. By letter dated October 8, 2002, DEA released portions of 97 pages and one page in its entirety to the plaintiff. Four pages were withheld in their entirety. Information was withheld pursuant to Freedom of Information Act (FOIA) exemptions (b)(2), (b)(7)(C), (b)(7)(F), and Privacy Act (PA) exemption (j)(2). The letter indicated that information was also withheld pursuant to FOIA exemption (b)(7)(D). However, no information was withheld pursuant to that exemption. By attached Comments Page, DEA informed the plaintiff that its records do not contain fingerprint analysis, and suggested that he contact the FBI for that information. A copy of the DEA letter dated October 8, 2002, is attached as Exhibit D.

10. By letter dated March 26, 2003, the plaintiff requested "all records in agency files, including, but not limited, to...documents, reports, pictures, exhibits, memorandums, letters, summaries, handwritten notes, recordings, and all other information concerning this subject which is contained in your offices..." The plaintiff requested a fee waiver. A copy of the plaintiff's letter dated March 26, 2003, is attached as Exhibit E.

11. By letter dated March 27, 2003, the plaintiff appealed DEA's response to the Department of Justice, Office of Information and Privacy (OIP). A copy of the plaintiff's letter dated March 27, 2003, is attached as Exhibit F.

12. By letter dated April 14, 2003, OIP acknowledged the plaintiff's appeal and notified him that it would be handled in approximate order of receipt. A copy of the OIP letter dated April 14, 2003, is attached as Exhibit G.

13. By letter dated July 14, 2003, OIP affirmed DEA's response, stating that DEA had correctly withheld information pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(F). A copy of the OIP letter dated July 14, 2003, is attached as Exhibit H.

<u>REQUEST 03-1078-F</u>

14. By letter dated April 17, 2003, addressed to DEA's South Central Laboratory, the plaintiff requested "any and all fingerprints and/or fingerprint analysis" regarding his criminal case and DEA lab file #6000103. The plaintiff also requested an accounting of disclosures, and requested that the laboratory forward a copy of the request to the appropriate agency field offices. The plaintiff also requested that for any records not in DEA's possession "please advise me if those records were once in your possession and where they are now... If the records are somewhere else, please advise me when and where they were moved." The plaintiff requested a fee waiver. A copy of the plaintiff's letter dated April 17, 2003, is attached as Exhibit I.

-4-

15. By letter dated May 19, 2003, DEA denied the plaintiff's request for a fee waiver, informing him that the requested information was not likely to contribute significantly to public understanding of the government, as required for a fee waiver. A copy of the DEA letter dated May 19, 2003, is attached as Exhibit J.

16. By letter dated May 27, 2003, the plaintiff enclosed a copy of his April 17, 2003, FOIA request, directing DEA to paragraph 13 of the request, in which he would be prepared to pay the fee in the fee waiver request was denied. A copy of the plaintiff's letter dated May 27, 2003, is attached as Exhibit K.

17. By letter dated July 9, 2003, DEA informed the plaintiff that it was unable to locate any responsive documents to his request for fingerprints/fingerprint analysis using the criminal case number he provided since DEA records are not indexed in that method. DEA informed the plaintiff that the DEA file number he provided was queried and produced negative results as it also is not a DEA file number. A copy of the DEA letter dated July 9, 2003, is attached as Exhibit L.

18. By letters dated January 7, 2004, addressed to DEA headquarters and to DEA's Laredo, Texas field division, the plaintiff requested "each and every record related to reqeustor (sic), Jose Miguel Chavez-Arellano in agency files. I also request that you search other branches and offices for the requested records." Copies of the plaintiff's letters dated January 4, 2004, are attached as Exhibit M. The copy of the request sent to the Laredo field office was forwarded to

-5-

DEA headquarters. Attached to the plaintiff's complaint as part of Exhibit F is a request letter to DEA's Houston, Texas field office also dated January 7, 2004. DEA has no record of receipt of the letter to the Houston field office.

19. By letter dated January 10, 2004, addressed to the South Central Laboratory, the plaintiff again requested an accounting of disclosures, and again requested that for any records not in DEA's possession, "please advise me if those records were once in your possession and where they are now. If the records are somewhere else, please advise me when and where they were moved." The plaintiff requested that DEA search other "branches and offices" for the requested fingerprint records, providing a DEA investigative file number, exhibit number, and three lab numbers. A copy of the plaintiff's letter dated January 10, 2004, is attached as Exhibit N.

20. By letter dated February 20, 2004, DEA informed the plaintiff that no further information other than that previously sent pursuant to his previous FOIA request was available to him, and that his request would be administratively closed. DEA informed the plaintiff that in order to receive information on fingerprint and analysis or fingerprint records, he must contact the FBI directly. A copy of the DEA letter dated February 20, 2004, is attached as Exhibit O.

## REQUEST 04-1588-P

21. By letter dated July 6, 2004, the Executive Office for United States Attorneys (EOUSA) forwarded one page to DEA for processing and a direct response to the plaintiff. Attached to the

letter were copies of the plaintiff's request to EOUSA dated January 7, 2004 and EOUSA's

response to the plaintiff. A copy of the EOUSA letter dated July 6, 2004, is attached as Exhibit P.


22. By letter dated August 5, 2004, DEA acknowledged the plaintiff's request and informed him

that it would be handled in chronological order based on the date of its letter. The letter

confirmed the plaintiff's obligation, that by filing the request, the plaintiff had implicitly agreed

to pay all applicable fees up to $25.00. A copy of the DEA letter dated August 5, 2004, is

attached as Exhibit Q.


23. By letter dated August 24, 2004, DEA released portions of one page to the plaintiff.

Information was withheld pursuant to FOIA exemptions (b)(7)(C) and PA exemption (j)(2). A

copy of the DEA letter dated August 24, 2004, is attached as Exhibit R.


24. By letter dated September 4, 2004, the plaintiff appealed DEA's action, stating that he had

"reliable information" to believe that DEA had additional records relating to his criminal case. A

copy of the plaintiff's letter dated September 4, 2004, is attached as Exhibit S.


25. By letter dated October 26, 2004, OIP acknowledged the plaintiff's appeal and informed

him it would be handled in approximate order of receipt. A copy of the OIP letter dated October

26, 2004, is attached as Exhibit T.

26. By letter dated December 16, 2004, OIP affirmed DEA's action, stating that DEA correctly withheld information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(F). OIP informed the plaintiff that DEA's action was taken on the only record referred to it by EOUSA, and that if he would like DEA to conduct a search for other records concerning him, he must make a request directly to DEA. A copy of the OIP letter dated December 16, 2004, is attached as Exhibit U.

## **REMEDIAL ACTION TAKEN IN LITIGATION**

27. As stated above, the plaintiff has requested information from DEA's Laredo, Texas field office. No search of the Laredo field office was conducted by SARO. In his Complaint, the plaintiff indicated that he had also requested information from DEA's Houston, Texas field office. Pursuant to these requests, on February 9, 2006, DEA contacted its Laredo and Houston, Texas field offices, requesting that searches of the field copies of the plaintiff's DEA investigative files be conducted, and any documents copies of which are not found in the DEA headquarters file be forwarded to CCA.

28. On or about February 16, 2006, DEA received 41 pages and 101 photographs from its Laredo, Texas field office. The Laredo field office is a division of the Houston field division, so the documents received constitutes the response from both locations. Ninety-three of the photographs were determined to be not responsive to the plaintiff's request. Copies of the eight responsive photographs were included on two of the pages, copies of four photographs on each page.

29. By letter dated March 7, 2006, DEA released portions of 16 pages and 23 pages in their entirety. Two pages were withheld in their entirety. Information was withheld pursuant to Freedom of Information Act (FOIA) exemptions (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(F), and Privacy Act (PA) exemption (j)(2) A copy of the DEA letter dated March 7, 2006, is attached as Exhibit V.

## ADEQUACY OF SEARCH

30. Investigative information about the plaintiff was reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. IRFS is a DEA Privacy Act System of Records that contains <u>all</u> administrative, general and investigative files compiled by DEA for law enforcement purposes.

31. In his request, the plaintiff cited his criminal case number. As stated above, DEA does not use criminal case numbers to store and/or retrieve documents.

32. DEA's law enforcement responsibility is the enforcement of Federal drug laws, including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* The Attorney General promulgated rules exempting the IRFS from the access provisions of the PA, pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R. § 16.98 (2005).

33. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to and the practical means by which DEA retrieves investigative reports and information from IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of Investigation (ROI), DEA Form-6 or other documents by date, that contain information regarding a particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

34. On July 24, 2002, a NADDIS query was conducted by SARO, in response to the plaintiff's request dated December 4, 2001. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. Additional NADDIS queries were conducted on January 24, 2003, upon receipt of the plaintiff's FOIA request dated January 7, 2004, and on August 3, 2004, upon receipt of a referral of one page from EOUSA. No additional documents were located pursuant to the second and third NADDIS queries.

35. As a result of the NADDIS query, the EOUSA referral, and the results of the searches of DEA's Laredo, Texas and Houston, Texas field offices, 144 pages of material responsive to the plaintiff's requests to DEA and EOUSA were identified. Portions of 114 pages and 24 pages in their entirety were released to the plaintiff. Six pages were withheld in their entirety. A *Vaughn* index detailing DEA's withholdings has been prepared, and it is attached as Exhibit W.

## DESCRIPTION OF RESPONSIVE MATERIAL

36. IRFS investigative case files generally contain several types of forms and other miscellaneous documents. The forms generally include (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a. The DEA Form 6, and form 6a, are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities, and information. The Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative and intelligence information is recorded. The Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section that extends to the bottom of the page.

37. The Form 6, Block 4, and Form 6a, Block 2, contain a G-DEP identifier. The Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The Form 6, Block 6, and Form 6a, Block 3, contains the file title, which is generally the subject of the investigation.

38. The narrative may be broken into several sections which include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS.

-11-

In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations.

39. The DEA Personal History Report, DEA Form 202, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual and (4) to correct personal data in the NADDIS index. The form consists of 76 blocks that are completed depending on the circumstances. . Block 1 or 4a contains the file title, which is generally the subject of the investigation. Block 2 or 5 contain a G-DEP identifier; blocks 68, 69, 71, 72, 74, and 75 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 8 through 57 contain identifying information about the individual to whom the form pertains. Blocks 42 through 67 contain information related to and explaining the action being taken.

40. DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. A separate form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16 - 20, personal information and identifiers of the defendant; and,

-12-

Blocks 24 and 25, the name and signature of a DEA Special Agent or other law enforcement officer.

41. The DEA Form 7, Report of Drug Property Collected, Purchased or Seized, includes a description of the alleged drugs seized, the quantity seized, and a laboratory analysis/comparison report. The form consists of 39 blocks of which Block 3 contains the G-DEP identifier; Block 5, the file title; Block 16, the "Remarks," contains descriptive information that may include names of law enforcement officers and third parties, and other information regarding the seizure; Blocks 17, 18, 20, 21, 23, 24, 34 and 37 contain the names and/or signatures of DEA Special Agents, other law enforcement personnel or DEA employees.

42. The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to report any non-drug property acquired. DEA uses the DEA-Form 7a to log or maintain a record of the non-drug property. The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent or other law enforcement officer.

43. The DEA Disposition of Non-Drug Evidence, DEA Form 48a, records the disposition of non-drug evidence. Similar to the DEA 48 and unlike other DEA forms, the blocks are not numbered, but are self explanatory.

44. The DEA Receipt for Cash or Other Items,  DEA Form 12, records DEA's acquisitions of cash or other items.

45. The Forensic Chemist Worksheet, DEA Form 86, is used to record the description of the evidence item and its packaging, including numerical identification, and recording the information as the items are initially removed from the evidence container.  Additionally, this document is used to record actions taken during the analysis of the evidence item.  These worksheets are used to record all rew data, observations and calculations and should be written to permit adequate reconstruction of the analysis of examination performed.

46. The responsive documents include 80 pages containing laboratory information.  Laboratory information regarding the plaintiff is reasonably likely to be found in DEA's Functional File System File No. 901, Laboratory Case Files.  Laboratory case files include documents related to the analysis of drug and non-drug evidence, including evidence accountability and disposition records, chemist worksheets, ballistics reports, and related analytical documents.  The laboratory information consists of seven DEA Forms 86, one including the DEA 86 back page, and 72 pages of pertinent and analytical material, such as charts and graphs depicting infrared/spectrographic analyses.

47.  In this case, the 144 pages of responsive information consist of:

      (a). eleven (11)  DEA ROIs;

      (b). two  (2)  DEA Personal History Reports;

(c)  one (1) DEA Defendant Disposition Report;

(d).  four (4)  DEA Report of Drug Property Collected, Purchased or Seized forms;

(e)  two (2) DEA Acquisition of Non-Drug Property and Regulatory Seizures forms;

(f).  one (1) Authorization for Use and Report of Use of Consensual Eavesdropping

and/or CC TV Equipment (Non-Telephone)

(g).  seven (7) DEA Forensic Chemist Worksheet;

(h).  one (1) DEA Disposition of Non-Drug Evidence;

(I) one (1) DEA Voucher for Payment for Information and Purchase of Evidence

(h).   one (1) cable;

(I).  two (2) memoranda;

(j) two DEA Receipt for Cash or other Items;

(k) one (1) Case Inventory form;

(l).   seventy -two (72) pages of laboratory information;

(m) two pages of copies of photographs;

(n) one eight (8) page U.S. Court or Appeals, 5th Circuit order and one seven (7) page

U.S. District Court, Southern District of Texas Order; and

(o)  one six (6) page criminal docket report.


48.  Detailed discussions of the basis and justification for invoking the Freedom of Information

Act exemptions for all of the redacted material, are set forth below.  The exemptions utilized by

DEA to withhold material pursuant to the Freedom of Information Act are  (b)(2),  (b)(7)(C),

(b)(7)(D),  and (b)(7)(F) of 5 U.S.C. § 552.

## WITHHOLDING PURSUANT TO EXEMPTION (b)(2)

49.  5 U.S.C. § 552 (b)(2) exempts from disclosure information relating to the internal rules and practices of any agency.

50.  Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, a few of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, NADDIS numbers, and confidential informant numbers..  The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

(a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b)  NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA.  Each number is unique and is assigned to only one violator within the DEA NADDIS indices.  (The NADDIS indices are exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); C.F.R. 16.98 (2005).  Knowledge of the NADDIS number provides a means of finding out not only drug violator information about the subject but also personal information about himself, relatives and any third

-16-

parties identifiable with the violator. Thus, Exemption (b)(7)(C) was used in conjunction with (b)(2) to withhold third- party NADDIS numbers.

(c) Informant identifier codes are assigned to DEA and other law enforcement agency cooperating individuals and are used instead of their names in all DEA reports, memoranda and other internal correspondence. Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out its law enforcement functions. Exemptions (b)(7)C), (b)(7)(D) and (b)(7)(F) were used in conjunction with (b)(2) to withhold these identities.

51. The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings. Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension create alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts. G-DEP codes are withheld on all pages except for pages 23, 25, 30, 34, 35, 37, 82, 87, and 150 through 162.

52. NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies. They are assigned by DEA for internal use and there is no public

interest in the release of these codes. NADDIS numbers that relate to third parties are withheld on

pages 2,8, 13, 15, 17, 19, 115, 117, and 118.  A DEA informant code is withheld on page 104.


## RECORDS OR INFORMATION COMPILED FOR LAW ENFORCEMENT PURPOSES

### Exemption (b)(7) Threshold

53.  DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and

Control Act of 1970, 21 U.S.C. § 801, et seq. (hereinafter, the Act) which authorizes DEA to

enforce the Act through the investigation of incidences involving the trafficking in controlled

substances, dangerous drugs and precursor chemicals and the violators who operate at interstate

and international levels; seize and forfeit assets derived from, traceable to, or intended to be used

for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange

information in support of drug traffic prevention and control.            .

54. The records deemed responsive to the plaintiff's FOIA request are criminal investigative

records.  The records were compiled during criminal law enforcement investigations of the

plaintiff and several third parties.


### Exemption (b)(7)(C)- Invasion of Privacy

55.  5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law

enforcement purposes the disclosure of which could reasonably be expected to constitute an

unwarranted invasion of personal privacy.  Many of the documents in the investigative case file

contain names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff. The individuals are protected from the disclosure of their identities.

56. In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities. In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals. Thus, disclosure the identities would be an unwarranted invasion of their personal privacy.

57. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

58. The identities of DEA Special Agents, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they

may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

59. The Special Agents and other law enforcement officers were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of DEA agents.

60. The identities of government employees, including DEA and FBI Special Agents, DEA drug and non-drug evidence custodians, and Task Force Officers, were withheld. Releasing their identities and information pertaining to these individuals would place them in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

61. Government employees were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

## Confidential Sources and Information Obtained from Confidential Sources - Exemption (b)(7)(D)

62. 5 U.S.C. § 552 (b)(7)(D) sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source.

### Express Confidentiality - Coded Informants

63. Coded informants are individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. They are assigned an identification code which is used in place of their name or referred to as CI.

64. Portions of page "104" are withheld pursuant to FOIA exemption (b)(7)(D). The page is the first page of a three page cable. The page contains information about the interaction of a coded informant with an undercover DEA agent and a third party.

## SAFETY OF LAW ENFORCEMENT PERSONNEL AND OTHER INDIVIDUALS

65. The names of DEA Special Agents, Supervisory Special Agents, Federal Bureau of Investigation (FBI) Special Agents, a DEA Task Force officer, a Deputy United States Marshal, and state/local law enforcement officers were withheld in accordance with 5 U.S.C. § 552 (b)(7)(F). Exemption (b)(7)(F) sets forth an exemption for records or information compiled for

law enforcement purposes the disclosure of which could reasonably be expected to endanger the life or physical safety of an individual.

66. DEA Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide variety of investigations, including sensitive and dangerous undercover operations.

67. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents. It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

68. In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm. DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs. Public disclosure of the identities of investigatory personnel would have a detrimental effect on the successful operation of DEA, as well as risk

harassment and danger to its agents and other law enforcement personnel. This information was also withheld pursuant to Exemption (b)(7)(C).

## SEGREGABILITY

69. In this case, each page was examined to determine whether any reasonably segregable information could be released. Pages were withheld in their entirety where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

70. Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process.

-23-

71. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

72. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

73. Pages "2" and "3" comprise a two page Personal History Report concerning a third party.  . The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)C),  and (b)(7)(F). The plaintiff's name is not mentioned on page "2". Information about the plaintiff found on page "3" is inextricably intertwined with information about a third party.

74. Page "4" is a DEA 7 concerning the acquisition of a drug exhibit from a third party.   The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)C),  and (b)(7)(F).  The plaintiff's name is not mentioned on the page.

-24-

75. Page "7" is a DEA 284 seeking authorization for use of eavesdropping equipment during the investigation of a third party. The page is withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)C),  and (b)(7)(F). The plaintiff's name is not mentioned on the page.

76. Page "106" is the third page of a three page cable regarding a DEA investigation. The page is withheld in its entirety pursuant to FOIA exemptions  (b)(7)C) and (b)(7)(F). The page contains names and addresses of third parties. The plaintiff's name is mentioned only in the Indexing Section.

77. The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

I declare under the penalty of perjury that the foregoing is true and correct.

3-9-06
_____
DATE

_Leila I. Wassom_
_____
Leila I. Wassom
Paralegal Specialist
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C.  20537