UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHAVEZ-ARELLANO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 05CV2503 (RMC) |
| UNITED STATES DEPARTMENT OF JUSTICE et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Plaintiff's FOIA request to the Federal Bureau of Investigation ("FBI"), the Executive Office for the United States Attorneys ("EOUSA"), and the Drug Enforcement Administration ("DEA"). Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Opposition") raises essentially three issues: (1) whether the agencies conducted an adequate search for responsive documents; (2) whether the agencies properly invoked certain exemptions; and, more specifically, (3) whether the agencies withheld fingerprint records and audio tapes.

Defendants respectfully move this Court for summary judgment because Plaintiff has not raised any material issues of fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Defendants conducted an adequate search for responsive records, EOUSA's and the DEA's redactions and withholdings clearly fall within exemptions to FOIA disclosure requirements, and the specific items Plaintiff requests do not exist.

## II.  LEGAL STANDARDS

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court]—that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its burden, the non-movant—here Plaintiff—may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment here, Plaintiff must present some objective evidence that would enable the Court to find he is entitled to relief.

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.  See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to de novo review by the courts. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980).  In a FOIA suit, an agency is entitled to summary judgement once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure.  See Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

As a practical matter, this standard for summary judgment means that the agency must provide the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  See, e.g., Center for Nat'l Security Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003); Hayden, 608 F.2d at 1384, 1386.  Summary judgment may be granted to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'"  Public Citizen, Inc. v. Dept. of State, 100 F. Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)); see also Nat'l Security Studies, 331 F.3d at 927.

Typically, the agency's declarations or affidavits are referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an exemption."  NTEU v. Customs, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing Mead Data Central v. United States Dept. of the Air Force, 566, F.2d 242, 251 (D.C. Cir. 1977)), and Vaughn v. Rosen, 484 F.2d at 828.  Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record".  NTEU, 802 F.2d at 527 n.9.

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption.  See  Citizens Com'n on Human Rights v. Food and Drug Admin., 45 F.3d 1325, 1326 (9th Cir. 1995).  Here, the DEA submitted a declaration and a coded Vaughn index in support of its motion for summary judgment.  The Vaughn

itemizations identify and describe the documents responsive to plaintiff's FOIA requests (to the extent responsive documents were found), and set forth the justification for exemptions claimed for the withholding of certain documents.

Where the agency responds that it can neither confirm nor deny the existence of responsive records, as EOUSA has with respect to one of Plaintiff's requests in this case, courts do not require a detailed listing of the responsive records, but instead require a publicly filed affidavit or declaration explaining, in as much detail as possible, why the "Glomar" response is necessary to support of the agency's claim of a FOIA exemption from release, without itself violating the third parties' privacy.  See Burke v. U.S. Dep't of Justice, 1999 WL 1032814 (D.D.C. Sept. 30, 1999) (citing Enzinna v. U.S. Dep't of Justice, 1997 WL 404327, *2 (D.C. Cir. 1997)); Wheeler v. CIA, 2003 WL 21675312, *5 (D.D.C. June 4, 2003) (quoting Phillippi v. CIA, 546 F.2d 1325 (D.C. Cir. 1981)).

### III.  ARGUMENT

**A.     Defendants Conducted An Adequate Search For Responsive Documents**

Plaintiff argues that "the F.B.I. limited its search for information about Plaintiff to files that it could located [sic] by searching its Central Records System (CRS) index, which is capable of locating most, but not all, documents responsive to a general request for information about a particular subject."  See Plaintiff's Opposition at 3 ¶ 15,  The agency's burden is to establish that it has conducted a search reasonably calculated to uncover all responsive records.[1]  Weisberg v.

---

[1] An agency must respond to a FOIA request only if it "reasonably describes" the records it seeks.  5 U.S.C. § 552(a)(3)(A).  A request meets this standard only if a professional agency employee familiar with the subject area is able to locate the requested records with a "reasonable amount of effort."  H.R. Rep. No. 93-876, at 6 (1974), reprinted in 1974 U.S.C.C.A.N. 6271.

Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The issue is not whether there might possibly exist other records responsive to the request, but whether the search for responsive records was reasonable. Id.

The FOIA does not require that an agency search **every** division or field office in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978) (emphasis added). "When a request does not specify the locations in which an agency should search, the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" Campbell v. United States Dep't of Justice, 164 F.3d 20, 28 (D.C. Cir. 1998), quoting Oglesby, 920 F.2d at 68. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Safecard Serv., Inc. v. Securities & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

In this case, the FBI conducted a reasonable search for responsive records and found none. See Hardy Decl. at ¶¶ 19-26. Specifically, in response to Plaintiff's requests, FBIHQ searched the Central Records System ("CRS") using Plaintiff's name in order to locate any main investigatory files maintained at HQ and the Houston Field Office ("HOFO"). See Hardy Decl. at ¶ 25. A search of the CRS by using the name "Jose Miguel Chavez-Arellano" would cover a thirteen-way phonetic breakdown of the name. See id. FBIHQ also used Plaintiff's date of birth and Social Security number to facilitate the identification of responsive records. See id. This search failed to locate any main investigatory files responsive to Plaintiff's request. See id.

Plaintiff's only challenge with respect to EOUSA is that the agency "did not submit a

Vaughn Index of withheld documents or detailed justification for their non-disclosure." See Plaintiff's Opposition at 14 ¶ 72.  As Defendants noted above, the agency's declarations or affidavits are referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  The purpose of a Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an exemption." NTEU v. Customs, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing Mead Data Central v. United States Dept. of the Air Force, 566, F.2d 242, 251 (D.C. Cir. 1977)), and Vaughn v. Rosen, 484 F.2d at 828.  Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record". NTEU, 802 F.2d at 527 n.9.

      Here, EOUSA provided the Court with a declaration that meets the requirements of a Vaughn index.  For instance, all of the records reviewed by EOUSA in response to plaintiff's requests were located in the United States Attorney's Office for the Southern District of Texas ("USAO/SDTX").  See Boseker Decl. at ¶ 23.  The USAO/SDTX conducted a systematic search for records identified by plaintiff.  See Boseker Decl. at ¶ 24.  The computer case tracking systems, PROMIS and LIONS, were used to determine all possible locations of responsive files. See id.  In addition, Mr. Boseker requested that USAO conduct a second search to confirm the number of responsive documents.  See Boseker Decl. at ¶ 25.  As a result of this search, one document was released in part and only one was withheld in full.  See Boseker Decl. at Records Witheld.

      Similarly, the DEA conducted a reasonable search for responsive records and located a total of 144 pages.  See Wassom Decl. at ¶ 47.  The DEA released 24 pages in full, withheld 114 pages in part, and withheld 6 pages in full.  See Wassom Decl. at ¶ 35 and Exhibit W.  The

DEA's Investigative Reporting and Filing System (IRFS) system, which contains all administrative, general and investigative files compiled by DEA for law enforcement purposes, was searched using the NADDIS index for records responsive to plaintiff's FOIA request. See Wassom Decl. at ¶¶ 30-32 (explaining IRFS system), ¶ 33 (explaining NADDIS system).

In sum, all three agencies have established that they have conducted searches reasonably calculated to uncover all responsive records. Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

**B.    Defendants Properly Invoked FOIA Exemptions**

Plaintiff's second challenge to Defendants' Motion for Summary Judgment ("MSJ") is that he "disagrees and objects to defendant's claimed exemptions." See Plaintiff's Opposition at 18 ¶ 97. As noted in Defendants' in its MSJ, the contents of Plaintiff's criminal investigation case file are exempt from the Privacy Act's disclosure provision. See MSJ at 16-17. Although access to the records was denied under the Privacy Act, they were also processed under the access provisions of the FOIA.

Plaintiff provides no basis to challenge DEA's application of Exemption 2, Title 5, United States Code, Section 552 (b)(2), which exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). DEA asserted Exemption 2 of the FOIA as to "violator identifiers," contained within the pages released to the Plaintiff. Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. Department of Air Force v. Rose, 425 U.S.

352, 369-70 (1976); National Treasury Employees Union v. United States Custom Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981). DEA has asserted Exemption (b)(2) of FOIA only as to the G-DEP codes, NADDIS numbers and informant identifier codes contained in the pages released to the plaintiff and identified in the Vaughn index attached to Defendants' MSJ at Exhibit W.

A variety of information qualifies as predominantly internal under Exemption 2. See PHE, Inc. v. United States Dept. of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (exempting general guidelines for conducting investigations). This includes information pertaining to violator and informant codes that could lead to the impairment of DEA investigations. Albuquerque Publishing Co. v. Department of Justice, 726 F. Supp. 851, 854 (D.D.C. 1989) ("The public has no legitimate interest in gaining information that could lead to the impairment of DEA investigations."). The DEA properly invoked Exemption (b)(2) to withhold violator identifiers and informant identifier codes. The DEA investigative case files include "violator identifiers". These identifiers are part of DEA's internal system of identifying individuals and information. There is no public interest in the release of these codes. See Wassom Decl. at ¶ 50.

G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity. See Wassom Decl. at ¶ 50(a). The release of such codes would help identify the particular priority given to narcotic investigation, types of criminal activities involved and violator ratings. Notably, suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them and/or avoid detection and

apprehension. As disclosure of these codes could thwart the DEA's investigative and law enforcement efforts, their withholding under exemption (b)(2) is appropriate. Id.

NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA.[2] See Wassom Decl. at ¶ 50(b). Each number is unique and is assigned to only one violator within the DEA NADDIS system. Id. Knowledge of the NADDIS number provides a means of determining details of the drug violations of the subject as well as personal information about any third parties identifiable with the violator. Id. Similarly, informant identifier codes are personal identifiers that were sometimes used in place of names in all DEA reports, memoranda and other internal correspondence. See Wassom Decl. at ¶ 50(c). Informant identifier codes provide sensitive information about individuals who cooperate with DEA and other law enforcement agencies in carrying out its law enforcement functions.[3] See id. Thus, the codes are exempted under (b)(2) in conjunction with Exemption (b)(7)(C).

In addition, Plaintiff provides no basis to challenge the DEA's application of Exemption 7(C) of the FOIA. This provision exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least 'a colorable claim' of its rationality.'" Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987),

---

[2] The NADDIS system is exempt from the access provisions of the Privacy Act, 5 U.S.C. § 552a(j)(2); 28 C.F.R. 16.98.

[3] Exemptions (b)(7)(C) and (b)(7)(D) were used in conjunction with (b)(2) to withhold these identities.

quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-780 (1989). The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995), citing Senate of Puerto Rico v. Department of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. Reporters Committee, 489 U.S. at 780; Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v. Dept. of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Committee, 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations

have traditionally been protected against release by Exemption 7(C).  Davis, 968 F.2d at 1281; Lesar v. U.S. Department of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity.  Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Department of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987).

      Here, the records are criminal law enforcement investigatory records, some of which contain names, addresses and other identifying information that reveal the identity of and disclose personal information about individuals who were witnesses or otherwise involved or associated with the plaintiff.  See Wassom Decl. at ¶ 55.  The records deemed responsive to the plaintiff's FOIA request are criminal investigative records.  The records were compiled during criminal law enforcement investigations of the plaintiff and several third parties.  See Wassom Decl. at ¶ 54.  5 U.S.C. § 552 (b)(7)(C) sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Many of the documents in this file contain names and addresses and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff.  The individuals are protected from the disclosure of their identities.  See Wassom Decl. at ¶ 55.

      In making the determination to withhold this information, the DEA attempted to balance the individuals' privacy interests against any discernible public interest in disclosure of the individuals' identities.  In this instance, the privacy interests outweighed any potential public

interest. Thus, disclosure of certain identities would be an unwarranted invasion of their personal privacy. See Wassom Decl. at ¶ 56. The public interest in disclosure of the information is determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce federal criminal and Controlled Substance Act statutes and/or how DEA conducts its internal operations and investigations. See Wassom Decl. at ¶ 57.

      The identities of government employees, including DEA Special Agents, ATF Special Agents, a DEA chemist, and DEA evidence technicians, were withheld. Releasing their identities and information pertaining to these individuals would place each of these persons in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file. See Wassom Decl. at ¶ 58. These persons were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff. See Wassom Decl. at ¶ 59. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Id. Moreover, there is no public interest to be served by releasing the identities of DEA agents, ATF agents, or DEA support staff members. Id.

      As Defendants' argued in their MSJ at 25-28, the DEA also properly applied Exemption 7(D). Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information compiled for law enforcement purposes if the disclosure: could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or

authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.  5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" " is to keep open the Government's channels of confidential information."  Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).  When invoking Exemption 7(D), the agency must demonstrate, through the use of reasonably detailed affidavits, that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993).

      Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well.  The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity.  Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983).  See also Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity").

      Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a

balancing of public and private interests.  Parker v. Department of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and private interests; if the source was confidential, the exemption may be claimed regardless of the public interest in disclosure").  Therefore, "once the agency receives information from a "'confidential source'" during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection."  Parker, 934 F.2d at 380 (editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114 (D.C. Cir. 1980)).  Thus, the second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.  Moreover, Exemption 7(D) continues to apply even after an investigation has been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996), and after the death of the source.  Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir. 1998).

    Once an express or implied promise of confidentiality has been established, it is extremely difficult to overcome.  In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'".  Parker, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).  Alternatively, a waiver can be shown by prior disclosure through authorized channels.  This requires the requester to show both that "'the exact information given to the [law enforcement authority] has already become public, and the fact that the informant

gave the same information to the [law enforcement authority] is also public.'" Parker, 934 F.2d at 378, quoting Dow Jones & Co., 908 F.2d at 1011.

DEA has adequately justified its invocation of (b)(7)(D) concerning one responsive page. See Wassom Decl. at ¶¶ 63-64. DEA has claimed this exemption with respect to the interaction of a coded informant with an undercover DEA agent and a third party. See Wassom Decl. at ¶ 64. Coded informants are those individuals who have a continuing cooperative association with DEA. These individuals are expressly assured confidentiality in their identities and the information they provide to DEA. They are also assured that their names will not be used in DEA investigative materials. See Wassom Decl. at ¶ 63; Vaughn index (Exhibit W) at page 104.

Lastly, the DEA properly applied Exemption 7(F), which provides protection to "any individual" when disclosure of information about him "could reasonably be expected to endanger [his] life or physical safety." 5 U.S.C. § 552(b)(7)(F). Currently, courts have held that the coverage provided by the exemption can afford protection of the names and identifying information of federal employees and third persons who may be unknown to the requester in connection with a particular law enforcement matter. Isley v. Executive Office for United States Attorneys, No. 96-0123, slip op. at 8-9 (D.D.C. Mar. 27, 1997) (upholding agency's nondisclosure of identifying information about individuals who provided information during murder investigation due to a reasonable likelihood that disclosure would threaten their lives), appeal dismissed, No. 97-5105 (D.C. Cir. Sept. 8, 1997). This protection can also be extended to the identities of informants who have been threatened with harm. Housley v. FBI, No. 87-3231, slip op. at 7 (D.D.C. Mar. 18, 1988). Moreover, Exemption 7(F)'s protection has also been held to remain applicable even after a law enforcement officer subsequently retired. Moody v. DEA,

592 F. Supp. 556, 559 (D.D.C. 1984).

In this instance, the names and identities of DEA Special Agents, Supervisory Agents and other law Enforcement officers have been deleted in accordance with exemption 7(F). See Wassom at ¶ 65. DEA Special Agents and Supervisory Agents, as well as members of other law enforcement entities are frequently called upon to conduct a wide variety of investigations including sensitive and dangerous undercover operations. Id. at ¶ 66. Special Agents and other law enforcement personnel routinely approach and associate with violators in a covert capacity. Id. at ¶ 67. Many of those violators are armed and many have known violent tendencies. It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats of harassment and attempted murder of undercover and other DEA Special Agents. Id. It may therefore be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations. Id. Exemption 7(F) was invoked in this case to protect all other individuals mentioned who could be potential witnesses or provided information. The exemption was used in conjunction with Exemption (b)(7)(C).

**C.    Defendants Did Not Improperly Withhold Fingerprint Anaylsis Or Audio Tapes**

Plaintiff's third challenge to Defendants' MSJ relates to the existence of fingerprint analysis records, see Plaintiff's Opposition at 9 ¶ 43, and of audio tapes. See id. at 16-18 ¶¶ 88-96. Plaintiff states that he "personally observed a female DEA specialist dust the packages in question with fingerprint powder after first weighing them." See id. at 11 ¶ 56. However, it is not clear from Plaintiff's Opposition or from his exhibits whether the DEA specialist lifted any latent prints from the packages in order to submit them for analysis. It is clear from the

16

testimony that even if latent prints were lifted, no analysis was performed.  The testimony from one of the case agents is as follows:

>   Q: But before they were sent to the lab, nobody - -
>
>   A: Nobody processed the prints; that is correct.
>
>   Q: And you being the case agent, you could have said: We need to send this for fingerprints?  You could have said that?
>
>   A: Yes, sir, we could have.
>
>   Q: And that could have been sent before it went to the lab?
>
>   A: Yes, sir.
>
>   Q: Because nobody had handled that, or other than whoever saw this bundle?  They brought it in, and they could have taken the precaution of saying, Hey, let's see what the case agent wants to do.  That could have been done?
>
>   A: It could have.
>
>   Q: But it was not?
>
>   A: Not to my knowledge?

See Appendix C to Plaintiff's Opposition at 37:14 - 38:5.  In light of the foregoing, Defendants did not fail to disclose fingerprint anaylsis from Plaintiff.

Finally, with respect to the existence of audio tapes or transcripts therefrom, "[t]he only audio tapes listed in the inventory [of the DEA's investigative file concerning Plaintiff] relate to a third-party and an undercover agent.  Thus, information related to the third-party was not released to the plaintiff.  Portions of the inventory were released to the plaintiff as page 113."

17

See Declaration of William C. Little, Jr. ("Little Declaration") (attached hereto) at ¶ 11.  The DEA also released to Plaintiff a "DEA Memorandum dated September 4, 2002, Subject: Evidence Disposition Verification, as page 112.  "The memoranda was generated to document the destruction of 'all evidence, exhibits and/or assets in the case.'  The exhibits that were disposed of included 'Non-drug Exhibits,' of which all audio tapes amassed as DEA exhibits were included."  See id. at ¶ 12.

## VIII.  CONCLUSION

For the foregoing reasons, Defendants submit that there are no genuine issues of material fact in dispute, and respectfully request entry of summary judgment.

Respectfully submitted,

   s/
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

   s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

   s/
KAREN L. MELNIK, D.C. BAR # 436451
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0338

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that, on April 13, 2006, I served a copy of the foregoing Defendants' Reply in Support of Motion for Summary Judgment, a supporting memorandum, and a proposed Order by first class mail, postage pre-paid, to the following:

    Jose M. Chavez-Arellano
    Register No. 93054-079
    P.O. Box 9000, FCI Seagoville
    Seagoville, Texas 75159


    _____
    KAREN L. MELNIK, D.C. Bar #436451
    Assistant United States Attorney
    Civil Division
    555 4th Street, N.W.
    Washington, D.C.  20530
    (202) 307-0338