UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

JOSE M. CHAVEZ-ARELLANO           )
                    Plaintiff,    )
                                  )
        v.                        )          Civil Action No.  05CV2503 (RMC)
                                  )
UNITED STATES DEPARTMENT          )
OF JUSTICE et al.,                )
                    Defendants.   )

**RECEIVED**

MAY 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**PLAINTIFF'S REPLY IN SUPPORT OF MEMORANDUM**

**IN OPPOSITION TO DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT**

Plaintiff ask the Court to deny Defendants' Motion for Summary Judgment.

## A.    Introduction

Plaintiff is Jose Miguel Chavez-Arellano, Pro-se; Defendants are the United States Department of Justice, Federal Bureau of Investigations ("FBI"), Executive Office for the United States Attorneys ("EOUSA"), and the Drug Enforcement Administration ("DEA").

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, as amended, and the Privacy Act ("PA"), 5 U.S.C. §552a, to order the production of agency records previously requested by Plaintiff.

Plaintiff respectfully moves this Honorable Court to deny defendants' motion for Summary Judgment because Plaintiff has raised material issues of fact. See Neal v. Kelly, 963 F.2d 453 (D.C. 1992); Local Civil Rule 7(h); and Fed. R. Civ. P. 56(e).

(1) Defendants wrongfully invoked FOIA Exemptions 5 U.S.C. §552(b)(2),(b)(7)(C), (D), and (F).; (2) Defendants wrongfully asserted that conversation in the requested audio-tapes were between only a third party and an undercover agent.; (3) Defendant

1

DEA acted improperly in performance of its duties; (4) Defendants improperly alleged that the requested audio-tapes were already destroyed.; (5) Defendants wrongfully assumed that fingerprint analysis were not taken in Plaintiff's Criminal Case.; and, (6) Defendants have only answered a portion of Plaintiff's numerous request for specific materials.

### B.    Legal Standards

Although Summary Judgment is proper in any case where there is no genuine issue of material fact, this is not a case where the Court should grant Summary Judgment. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A defendant who seeks Summary Judgment on a Plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting Summary Judgment evidence that negates the existence of a material element of Plaintiff's claim or (2) showing there is no evidence to support an essential element of Plaintiff's claim. Celotex Corp., 477 U.S. at 322-25, 106 S.Ct. at 2552-54; J. Geils Band Employee Benefit Plan v. Smith Barney Shearson Inc., 76 F.3d. 1246, 1251 (1st Cir. 1996) Defendant cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential element of his claim. Rather, defendant must demonstrate an absence of genuine factual dispute. See, Celotex Corp., 477 U.S. at 327, 106 S.Ct. at 2555. Only if defendant meet its burden is Plaintiff required to respond by Summary Judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e).

In determining whether there is a disputed issue of material fact that precludes Summary Judgment, the Court must consider all evidence in the light most favorable to Plaintiff as the non-movant. Hom v. Squire, 81 F.3d. 969,973 (10 Cir 1996).

## C.    Argument and Authorities

I.    DEFENDANTS WRONGFULLY INVOKED FOIA EXEMPTIONS
5 U.S.C. § 552(b)(2),(b)(7)(C),(D),and (F).

### Exemption 5 U.S.C. §552(b)(7)(C), in Conjunction with (b)(7)(F).

The Supreme Court repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA. "Without question, the Act is broadly conceived. It seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforcement public right to secure such information from possibly unwilling official hands". John Doe Agency v. John Doe Corp., 493 U.S. 146; EPA v. Mink, 410 U.S. 73,80 (1973).

Defendants wrongfully applied Exemption (b)(7)(C) & (F), asserting that the identities of government employees, including DEA Special Agents, ATF Special Agents, a DEA Chemist, and DEA evidence technicians, were held.

Releasing their identities and information pertaining to these individuals would place each of these persons in such a position that they may suffer undue invasion of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file. See Wasson Decl. at ¶ 58.

Likewise, defendants asserted that the records are criminal law enforcement investigatory records, some of which contain names, addresses and other identifying information that reveal the identity of and disclose personal information about individual who were witnesses or otherwise involved or associated with the Plaintiff. See Wasson Decl. at ¶ 55.

However, Plaintiff asserts that Exemptions (b)(7)(C) & (F) do not apply because the names/identities have already been made public at the trial.

Rosalio Morales-Cabrera (Plaintiff's co-defendant, third party, and Government's key witness) [TR:II,Pg.63,64]

Alicia Orvides-Garcia (Government's alleged confidential informant)  [TR:II,Pg.95]

Jose Lopez Jr. (The undercover agent and Investigator with the Webb County Sheriff's Office, currently assigned to the Laredo, Texas, Multi-Agency Financial Disruption Task Force, and former DEA's Task Force.)  [TR:I,Pg.81,82]

Jose Ruben Martin (Special Agent with DEA in Laredo, Texas) [TR:I,Pg.207]

Bernie Vasquez (Case Agent and Investigator with the Laredo, Texas, Police Department, assigned to the Financial Agent Task Force, previously assigned to the DEA Task Force) [TR:II,Pg.15,16]

Shaun Hacking (DEA Special Agent)  [TR:II,Pg.57]

Allen D. Sawyer (Forensic Chemist at the DEA lab in Dallas, Texas, at 1880 Regal Row)  [TR:I,Pg.192]

Andy Guardiola (Assistant U.S. Attorney, 1100 Matamoros, Suite 200, Laredo, Texas 78042, Phone No. (956) 723-6523) [Plaintiff's PSI]

Mauro F. Luna (Senior U.S. Probation Officer, Laredo, Texas 78042, (956) 790-1720, Ext.306)  [Plaintiff's PSI]

(See all cited transcript pages for argument I. in exhibit **A**)

In sum, the government cannot rely on an otherwise valid exemption claim to justify withholding information that has been "officially acknowledged" or is in the "Public domain". Afshar v. Dept. of State, 702 F.2d. 1125,1130-34 (D.C. Cir 1983); Accord Fitzgibbon v. CIA, 911 F.2d. 755,765-66 (D.C. Cir 1990).

Defendants cannot withhold information, that by the way, is already in the public domain. Plaintiff through his trial transcripts is providing basis to challenge the Defendants' application of Exemption (b)(7)(C) & (F) of the FOIA.

Thus, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy". This determination necesitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g. <u>U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749,776-780 (1989).

Indeed, Plaintiff knows the identities of government employees. Plaintiff agrees that Defendants delete any names, titles, and addresses to prevent an unwarranted invasion of their personal privacy, **but** respectfully request that Defendants release legible copies of all records in its possession relating to Plaintiff's criminal investigation.


## Exemption 5 U.S.C. §552(b)(2)

Defendants asserted that Exemption 5 U.S.C. §552(b)(2) of the FOIA, such as G-DEP codes, NADDIS numbers and Informant Identifier Codes were properly invoked under the FOIA Exemptions.

Moreover, Defendants explained that G-DEP Codes are assigned to all DEA cases at the time the case file is opened. The NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA. Similarly, Informant Identifier Codes are personal identifiers that were sometimes used in place of names in all DEA reports, Memoranda and Internal Correspondence. <u>See</u> Wasson Decl. at ¶ 50.

However, Plaintiff is not interested in the above mentioned Codes and/or Numbers and agrees that Defendants delete such Codes, **but** Plaintiff respectfully request that Defendant[s] release the remaining information of all records in its possession relating to Plaintiff's Criminal Case.

## Exemption 5 U.S.C. §552(b)(7)(D)

Defendants wrongfully applied Exemption (b)(7)(D) of the FOIA. Defendants asserted that the Second Clause of Exemption (7)(D) broadly protects all "information furnished by a Confidential Source" to law enforcement authorities.

Defendant DEA has claimed this exemption with respect to the interaction of a Coded Informant with an undercover DEA agent and a third party. See Wasson Decl. at ¶ 64.

However, a waiver can be shown by prior disclosure through authorized channels. [trial transcripts are public records and authorized channel for disclosure] This requires the requester to show both that "the exact information given to the [law enforcement authorities] has already become public, and the fact that the informant gave the same information to the [law enforcement authorities] is also public. Parker v. Department of Justice, 934 F.2d. 375-378, (D.C. Cir 1991), quoting, Dow Jones & Co. v. Dept of Justice, 908 F.2d. 1006,1011, (D.C. Cir 1990).

In support for a finding that "the exact information given to the DEA has already become public, and the fact that the informant gave the same information to the DEA is also public. Plaintiff respectfully asserts the following:

In Plaintiff's trial Mrs. Alicia Ontiveros-Garcia who has the DEA Coded Confidential Informant, called by phone to Mr. Rosalio Morales [the alleged third party] requesting to buy drugs.(See TR:II,Pg.66)

Moreover, once Mrs. Alicia Ontivero (the C.I.) set up the deal, she connected to Mr. Morales with Mr. Jose Lopez Jr. [the undercover agent] who pursued and accomplished the drug transactions and subsequent arrest of Plaintiff.

> Q: Mr. Morales, this lady that called you, who is she?
>
> A: Her name is Alicia Orvides-Garcia...
>
> Q: And she is the one that connected you with this Lopez person?

A:  Yes.

Q:  And you established contact with Mr. Lopez from Apatzingan?

A:  It was through her that we did all that ...    [TR:II,Pg.95]

Therefore, the Exemption the Defendants invoked pursuant to 5 U.S.C. §552(b) (7)(D) does not apply because a waiver was showed by prior disclosure through authorized channels.

Moreover, Defendants did not provide detailed explanations relating to each alleged confidential source, in order for Plaintiff have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality.

Thus, Plaintiff agrees that Defendants should delete any code numbers for confidential informant, **but** respectfully request that Defendants release legible copies of all records in its possession relating to Plaintiff's criminal investigation.


II.    DEFENDANTS WRONGFULLY ALLEGED THAT THE CONVERSATION IN
       THE REQUESTED AUDIO-TAPES WAS BETWEEN ONLY A THIRD PARTY
       AND AN UNDERCOVER AGENT.

The Defendants wrongfully asserted that; "with respect to the existence of audio tapes or transcripts therefrom, [t]he only audio tapes listed in the inventory [of the DEA's investigative file concerning Plaintiff] relate to a third-party and an undercover agent. Thus, information related to third-party was not released to the Plaintiff." See Defendant's replay @ 17.

Plaintiff provides basis to challenge the Defendants' wrongful assertion by showing the following:

The Prosecutor questioned to the undercover agent, Mr. Lopez.

Q.  Investigator Lopez, are you the same Jose Lopez that testified earlier in this trial?

A:  Yes.

Q:  And earlier you testified that you were at Danny's Restaurant
    meeting---you testified with Rosalio Morales and the defendant,
    Mr. Chavez?

A:  Yes.

Q:  Were you wearing any kind of electronic recording equipment
    at that time?

A:  Yes, I was.

Q:  Just briefly, what kind of electronic recording equipment?

A:  A transmitter, transmitter which was recording the conversation...

Q:  Now I'm going to play for you a tape that's been introduced into
    evidence as exhibit number 2... and I am going to ask you if you
    can listen to the tape and if you can tell us to the best of your
    ability, you having been the person who was there present, if you
    can tell us what it is that's on the recording.

    (Tape played aloud in courtroom)

    THE WITNESS: Can I listen to it again?

    THE COURT: Certainly.

    (Tape played aloud in courtroom)

Q:  Would you like for me to play it again, or do you have an idea?

A:  No, I've got an idea.

Q:  Can you tell us?

A:  **That was me asking the defendant,**[the Plaintiff] "Pa' donde vamos"?

    INTERPRETER: "Where are we going"?...  [TR:II,Pg.124,125,126]

    (See all cited transcript pages for argument II. in exhibit B)

The record is clear that Plaintiff was directly involved in the conversation and
subsequent recorded conversation, contrary to the Defendants' assertion.

Therefore, Plaintiff respectfully request any available tapes or "transcripts"
related to this conversation between, Plaintiff and the undercover agent, Mr Jose
Lopez Jr. that by the way is already public records.

III.    DEFENDANT DEA ACTED IMPROPERLY IN PERFORMANCE OF ITS DUTIES.

The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governor accountable to the governed. NLRB v. Robbins Tire & Robber Co., 437 U.S. 214, 242 (1978).

Plaintiff would question the validity of the following statements, because it seems very suspicious that:

A) The several audio-tapes recorded at different meetings, times and places were suddenly inaudibles.

    Q:  You are saying that the second, third, fourth and fifth conversations were all also taped?

    A:  As long as there was a meet that occurred on those particular days, they were taped...  [TR:II,Pg.33-10/13]

    Q:  And did you listen to those cassette tapes?

    A:  Yes, I listened to the audio cassette tapes, but they were all inadible.

    Q:  And are you saying the four tapes or the five tapes that you have, that they were all inaudibles.

    A:  Yes, to me they were.   [TR:II,Pg.48-1/3]

B) The undercover agent testified to the jury that he specifically asked to Rosalio Morales and the defendant[the Plaintiff] if they had the crystal [the drug] ready for him.

    Q:  Okay. And what did you do when you saw them?

    A:  I went and sat with them. Rosalio introduced the defendant to me. He introduced his as Gato [cat]. We---you know, we talked for a little bit. We ate, and then after that, I specifically asked Rosalio and the defendant if they had the crystal ready for me.

    Q:  Is that the word you used?

    A:  Yes, I did.

Q:  Okay. And what did he say or whom answered?

A:  I looked at the defendant. He replied yes. I looked at
    Rosalio and he replied yes. [2] [TR:I,Pg.129]

C)  Morales clearly contradicted to Mr. Lopez about that Mr. Lopez specifically

asked whether the crystal was ready for him.

Q:  And did---at that time, did Jose Lopez at any time
    mention the word crystal?

A:  **No**, no. I don't recall. The only thing that he would ask
    me if whether everything was ready and I told him yes.
    [TR:I,Pg.77-2/8]

D)  When the government introduced to the jury the recorded conversation, albeit

inaudible, inwhich agent Lopez purported it to be a conversation between Lopez and

Plaintiff, the Court interpreter translated the audible part as follows:

THE INTERPRETER:  It appeared---to the best of my ability, Your
Honor, it appeared that he said; "Donde esta el Gato", Where is
el Gato?. And the other one said "Ha", and then he said "Where
are we going?". And then they started yelling; Police, Police,
in Spanish Policia. Up against the car...    [TR:II,Pg.115,116]

E)  When the jury was deliberating. The Court received a note from the Jury.

The note says:

Judge Ellison, did officer Lopez ask Chavez-Arellano first or Morales-
Cabrera first; "Do you have my crystal?".    [TR:III,Pg.2]

(See all cited transcript pages for argument III. in exhibit **C**)

The jury undoubtedly inferred that agent Lopez was correct when allegedly asked

both defendants: "Do you have my crystal ready?". This false assertion clearly influ-

enced the jury's ultimate verdict.

Thus, Plaintiff has produced clear evidence that would warrant a belief by a

---

[2]  It is important to point out that in such meeting, like in the previous ones,
     the undercover agent always was wearing an electronic recording equipment.
     (See exhibit "B" for transcript pages 124,125, and 126)

reasonable person that an alleged government impropriety in prosecuting Plaintiff may have occurred.

Likewise, the information Plaintiff is seeking is necessary in order to refute what the government falsely asserted at Plaintiff's trial. Plaintiff needs this information to show the public that the DEA acted negligently or improperly in performing its duties.

Moreover, Plaintff wants to know: (1) why these recorded audio-tapes were suddenly inaudibles?; (2) whether the recorded audio-tapes were really inaudibles as alleged by the DEA?; (3) whether such tapes were accidentally or intentionally altered?; (4) whether such tapes reflect what the agent alleged Plaintiff replied?; and (5) how many tapes were really recorded?. However, the only way of knowing this information is obtain those tapes and send those to the lab. Alternatively, obtain the transcripts of the tapes.

A Court must balance privacy interests involved against public interest in disclosure, and, under this calculus, the only relevant public interest is on that focuses on the citizens' right to be informed about what their government is up to. Western Center for Journalism v. IRS, 116 F. Supp 2d. at 12; United States Dept of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749,762 (1989).

Therefore, Plaintiff has satisfied the public interest requirement by demonstrating that requested information is necessary to show the DEA and/or other responsible officials acted negligently or otherwise improperly in the performance of their duties.

Thus, Plaintiff respecfully request disclosure, not concealment, of all recorded audio-tapes and transcripts of tapes made during Plaintiff's criminal investigation.

//

//

IV.   DEFENDANTS IMPROPERLY ALLEGED THAT THE REQUESTED
      AUDIO-TAPES WERE ALREADY DESTROYED.

The purpose of the FOIA was to correct improper denials of requests for public information by various federal agencies. FDIC v. Ernst & Ernst, 677 F. 2d. 230,232 (1982).

Defendants stated that: "The DEA also released to Plaintiff a DEA Memorandum dated September 4,2002, Subject; Evidence Disposition Verification, as page 112. The Memoranda was generated to document the destruction of 'all evidence, exhibits and/or assets in the case'." See Defendant's reply @ 18.

Likewise, this improper assertion was also supported by Declaration of William C. Little, Jr., at ¶ 12.

In fact, the alleged Memoranda in regard to "Evidence Disposition Verification", is to verify the "disposition," NOT DESTRUCTION, of all evidence, exhibits and/or assets in Plaintiff's case, contrary to Defendants' assumption that "the Memoranda was generated to document the destruction of all evidence".

Moreover, the Defendants have not provided detailed explanation relating to such tapes' destruction. Thus, without any prove corroborating such destruction the Defendants assertion is void.

For instance, the Case Inventory list on page 113 reveal plaintly that:

N13-  One set of Room Keys was destroyed.

N14-  One set of Ford Car Keys was transferred.   [See Exhibit D]

The paperword provided to Plaintiff by defendant does not show that the audio-tapes were destroyed as defendant alleges in its "Defendant's Reply in Support for Summary Judgment @ 18."

Therefore, Plaintiff request to see the portion of the Case Inventory that directly relates to the physical destruction of the tape-recorded conversation between Plaintiff and the undercover agent. Plaintiff has standing under the FOIA to obtain this material.

V.    DEFENDANTS WRONGFULLY ASSUMED THAT FINGERPRINT ANALYSIS
      WERE NOT TAKEN IN PLAINTIFF'S CRIMINAL INVESTIGATION.

Defendants falsely asserted that: "It is clear from the testimony that even if latent prints were lifted, no analysis was performed."

Then, defendants cited the testimony from one of the case agents stating that he had no knowledge, if anybody processed the prints.

This equivocal not to my knowledge? replies means, **he is not sure.** In fact, this inconclusive statement itself does not means that someone else could have performed a latent print analysis.

At a minimum, the court should order a new search for the fingerprint analysis Plaintiff has been seeking since 2001.

VI.    DEFENDANTS HAVE ONLY ANSWERED A PORTION OF PLAINTIFF"S
       NUMEROUS REQUEST FOR SPECIFIC MATERIALS.

Defendants have focused its attention only to a small part of the Plaintiff's general request. Plaintiff has requested "any and every record related to Plaintiff into the DEA, FBI, and EOUSA's record system."

The records requested were, but not limited to:

    1)  Any audio and video tape and transcripts therefrom.

    2)  Any DEA's Reports, Memoranda and Letters.

    3)  DEA's Debriefing Statements.

    4)  DEA's Interview Reports, (third party)

    5)  DEA's Surveillance Photos and Vedeos.

    6)  DEA's Surveillance Reports.

    7)  DEA' Forms, and Telephone Records.

    8)  Electronic and E.L.S.U.R. Files.

    9)  Database References.

10)  Any fingerprint results taken from the seized drug
     and/or fingerprint records, and

All miscellaneous files, and all other information concerning Plaintiff' which is contained in the DEA, FBI, and EOUSA's possession.

However, the Defendants have only focused its attention to the requested finger-print analysis and audio-tapes and have overlooked the above mentioned records. This does not satisfy the appearance of fairness required when the public interacts with the Government.

## D.    Conclusion

Plaintiff has made a valid and reasonable request for the information and mate-rials in the DEA, FBI, and EOUSA's possession. The Defendants have denied the request by  only providing a small portion of the requested information and now are attempting to avoid further disclosure by invoking exemptions that do not apply. The Defendants actions in withholding the requested information and materials are done so in an arbitrary and capricious manner that prevents Plaintiff from receiving valuable research material needed to litigate his case.

Moreover, Plaintiff has not rested on mere allegations and has proffered specific facts showing that a genuine issue exists for trial. Plaintiff has presented objective evidence that would enable the Court to find he is entitled to relief.

Plaintiff prays this Honorable Court to deny Defendants' Motion for Summary Judg-ment and order the Defendants to turnover the requested information and materials.

So may it be ordered.

Respectfully Submitted,

Jose M. Chavez-Arellano
Reg. No. 93054-079
P.O.Box 9000
Seagoville, TX 75159

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 9th, 2006, I served a copy of the foregoing

Plaintiff's Reply in Support of Memorandum in Opposition to Defendant's Motion for

Summary Judgment, and supporting exhibits by first class mail, postage pre-paid, to

the following:


        Karen L. Melnik
        Assistant U.S. Attorney
        Civil Division
        555 4th Street, N.W.
        Washington, D.C. 20530


                                          Jose M. Chavez-Arellano
                                          Pro se, Reg. No. 93054079
                                          FCI Seagoville
                                            P.O. Box 9000
                                          Seagoville, TX 75159


## PROOF OF FILING

This document is hereby filed on the 9th day of May, 2006, pursuant to the

holding in Houston v. Lack, 487 U.S. 266, (1988), by placing it in the mail box

designated for outgoing legal mail.


                                          Jose M. Chavez-Arellano
                                          Pro se, Reg. No. 93054079
                                          FCI Seagoville
                                          P.O. Box 9000
                                            Seagoville, TX 75159