## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JOSE MIGUEL CHAVEZ-ARELLANO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2503 (RMC)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **JUSTICE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Jose Miguel Chavez-Arellano, proceeding *pro se*, filed this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, appealing the disposition of his records requests by the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the Drug Enforcement Administration ("DEA"). Defendants have filed a motion for summary judgment and plaintiff an opposition to the motion. For the following reasons, the Court will grant Defendants' motion.

### I. BACKGROUND

### A. FBI

On December 4, 2001, Mr. Chavez-Arellano sent a FOIA request to the Department of Justice ("DOJ"), Justice Management Division, for a copy of "File # M-6000103 DEA Lab Analysis of Methamphetamine and Fingerprint Analysis" from the case prosecuted against him in the United States District Court for the Southern District of Texas. Decl. of David M. Hardy Exh.

A.[1]  The request was forwarded to the FBI.  *Id.*  By letters dated July 17, 2002, and August 7, 2002,

the FBI informed Plaintiff that a search of their records system and files did not produce any records

responsive to his request.  *Id.* Exhs. C, D.

On January 7, 2004, Plaintiff sent a FOIA request to the FBI's headquarters

("FBIHQ") seeking all records related to him in all of the agency's branches and offices.  *Id.*  Exh.

E.  In response, FBIHQ advised Plaintiff that it could not locate any records pertaining to him.  *Id.*

Exh. F.  Plaintiff sent the same request to the FBI's Houston Field Office and the FBIHQ's Assistant

Director of the Laboratory Division.  *Id.* Exhs. G, I.  Plaintiff again was advised that no records were

found responsive to his request.  *Id.* Exhs. H, J.

Plaintiff appealed the disposition of his requests to the Office of Information and

Privacy ("OIP").  *Id.* Exh. K.  The OIP affirmed the FBI's actions on Plaintiff's requests.  *Id.*  Exhs.

M, N.

## B. EOUSA

On January 7, 2004, and January 10, 2004, Plaintiff sent letters to the EOUSA

requesting all records pertaining to him maintained by the United States Attorney's Office in the

Southern District of Texas ("USA/SDTX").   Decl. of John F. Boseker Exhs. A, G.   After the

EOUSA advised Plaintiff that his request would take up to nine months to process, Plaintiff

narrowed his request to fingerprint records in his criminal case, records related to confidential

informants, and a *Vaughn* index.  *Id.* Exhs. B, C, D, H.

---

[1] According to Plaintiff, he was convicted of conspiracy to possess with intent to distribute
approximately fourteen pounds of methamphetamine and is serving a 235-month sentence.  Pl.'s
Opp'n to Mot. for Summ. J. at 2.

The EOUSA notified Plaintiff it had found responsive records and was sending him 8 pages in full, one page with portions withheld, and was withholding one page in full. *Id.* Exh. F. The EOUSA stated that it was withholding certain information from the one-page document pursuant to FOIA Exemptions 5 and 7(C). *Id.* The EOUSA also located one document that originated with the DEA and referred the document to that agency for a determination of whether the record was subject to disclosure under FOIA. *Id.*

Plaintiff appealed the EOUSA's disposition of his request. *Id.* Exh. M. The OIP affirmed the EOUSA's decision and informed Plaintiff that he could obtain fingerprint records directly from the DEA. *Id.* Exh. O.

### C. DEA

Plaintiff made similar FOIA requests to the DEA. On June 21, 2002, DOJ referred to the DEA Plaintiff's request for "File #M-6000103 Lab Analysis of Methamphetamine and Fingerprint Analysis." Decl. of Leila I. Wassom Exhs. A, B. The DEA released to Plaintiff portions of 97 pages of records, one page in its entirety, and withheld four pages in full pursuant to FOIA Exemptions 2, 7(C), and 7(F). *Id.* Exh. D. The DEA informed Plaintiff that it did not possess any fingerprint analysis records and suggested he contact the FBI for that information. *Id.* The OIP affirmed the DEA's decision. *Id.* Exhs. F, H.

Plaintiff sent a FOIA request to the DEA's South Central Laboratory in Dallas, Texas, for "[a]ny and all fingerprints and/or fingerprint analysis regarding Criminal Case #5-00-CR-00355 (Laredo Division), DEA lab. File #6000103, Government Exhibit No. three (3), [5 bundles wrapped in brown wrapping tape containing brown powder]." *Id.* Exh. I. The DEA informed Plaintiff that it could not locate any responsive records using the criminal case number he had provided because

3

the agency did not index records by that method. *Id.* Exh. L.

In January, 2004, Plaintiff sent letters to the DEA's Laredo, Texas, office requesting all records in the agency's file related to him, including other branches and offices. *Id.* Exh. M. After the complaint was filed in this action, DEA headquarters requested and received 41 pages of records responsive to Plaintiff's request from the Laredo office. Decl. of Leila I. Wassom ¶¶ 27, 28. On March 7, 2004, the DEA released to Plaintiff 23 pages in their entirety and 16 pages in part, and withheld 2 pages in their entirety. *Id.* Exh. V. On January 10, 2004, Plaintiff sent another request to the DEA for all records regarding him. *Id.* Exh. N. In response, the DEA stated that it had no records other than those already provided to Plaintiff. *Id.* Exh. O.

The EOUSA had referred a one-page record responsive to Plaintiff's FOIA request to the DEA for processing because the document had originated with that agency. *Id.* Exh. P. The DEA released portions of the document. *Id.* Exh. R. The DEA's action was affirmed on appeal by OIP. *Id.* Exhs. S, U.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, "any factual assertions in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (citation and quotation omitted).

### III. ANALYSIS

### A. Adequacy of the Agency Searches

To obtain summary judgment on the issue of the adequacy of the search for records under FOIA, an agency must show that, "viewing the facts in the light most favorable to the requester, . . . [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with FOIA. *Id.* at 127. The agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *Id.*

### 1. FBI

The FBI searches for records responsive to a FOIA request through the use of the Central Records System ("CRS"). Decl. of David M. Hardy ¶ 19. The records maintained in CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. *Id.* The system is a numerical sequence of files broken down according to subject matter and individuals' names. *Id.* Certain records in this system are maintained at FBIHQ and records pertinent to specific field offices are maintained at those sites. *Id.*

In this case, the FBI searched the CRS indices for the records at FBIHQ and the Houston, Texas, field office where Plaintiff had submitted his request. *Id.* ¶ 24. The FBI searched using Plaintiff's given name and thirteen phonetic variations. *Id.* ¶ 25. The search did not locate any responsive records. *Id.*

It is Plaintiff's burden in challenging the adequacy of an agency's search to present evidence rebutting the agency's initial showing of a good faith search. *Weisberg*, 705 F.2d at 1351-52. The Court's inquiry regarding the adequacy of the search focuses on the search itself, not its results. *Weisberg*, 745 F.2d at 1485. The affidavit submitted by the FBI shows that the agency searched the relevant databases to find records responsive to Plaintiff's request. Plaintiff has not offered any contrary evidence or shown that the search was not undertaken in good faith.

## 2. EOUSA

Plaintiff requested that the EOUSA provide all documents out of the USA/SDTX regarding his criminal case. That office conducted a search to determine the location of all documents related to Plaintiff. Decl. of John F. Boseker ¶ 24. The search was done by the use of the computer case tracking systems PROMIS and Legal Information Office Network Systems ("LIONS"). *Id.* The system enabled the EOUSA to retrieve all existing documents relating to Plaintiff's criminal prosecution by use of Plaintiff's name, file jacket number, and district court case number. *Id.* By policy, the USA/SDTX purges its files of all non-public records once a defendant is sentenced. *Id.* ¶ 25.

The location and breadth of the search was adequate under FOIA. Plaintiff has not made a compelling argument that there are other records pertaining to him that have not been retrieved.

### 3. DEA

According to the declaration provided by the DEA, all documents responsive to Plaintiff's FOIA request were likely to be found in the DEA's Investigative Reporting and Filing System ("IRFS"). Decl. of Leila I. Wassom ¶ 30. The IRFS contains all investigative reports and files compiled for law enforcement purposes. *Id.* The IRFS is accessed through the DEA Narcotics and Dangerous Drug Information System ("NADDIS"). *Id.* ¶ 33. Individuals are indexed and identified in NADDIS by name, social security number, and/or date of birth. *Id.* In this case, a NADDIS inquiry was conducted in response to Plaintiff's requests for information about himself and his criminal case. *Id.* ¶ 34. The DEA located 144 pages of documents that referred to Plaintiff. *Id.* ¶ 35.

Plaintiff contends that the DEA's search was obviously inadequate because of the small number of documents the agency disclosed to him. Pl.'s Opp'n to Mot. for Summ. J. at 9, 12. In response, the DEA states that it has destroyed all non-drug exhibits from Plaintiff's case. Decl. of William C. Little, Jr. ¶ 12.

For an agency to have improperly withheld records, it must have possession or control over the record. *Nat'l Sec. Archive v. Archivist of the U.S.*, 909 F.2d 541, 546 (D.C. Cir. 1990). FOIA does not require an agency to create and retain records, but rather to provide access to records that have been retained. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 130, 151-52 (1980). The fact that the agency once possessed potentially responsive records that subsequently have been destroyed does not preclude the entry of summary judgment for the agency. *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 65 (D.D.C. 2003). FOIA does not require agencies to retain records. *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

An agency's failure to find a particular document does not undermine the determination that the search was adequate. *Id.*; *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995). Mere speculation as to the existence of records not located in the agency's search does not undermine the adequacy of the search. *See Weisberg*, 745 F.2d at 1485 (focus of court's inquiry is on reasonableness of search, not whether undisclosed records may exist). Based on the DEA's declarations, the Court finds that the agency's search was adequate.

### 4. Conclusion

It is apparent from the declarations submitted by the three agency representatives that Defendants have made a "good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Oglesby*, 920 F.2d at 68). No more is required. Therefore, Defendants' searches for Plaintiff's requested records were adequate to fulfill Defendants' obligations under FOIA.

The Court will next review whether the Defendants properly claimed that certain records were exempt from disclosure under the statute.[2]

### B. Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). This exemption protects materials involving internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest," and internal agency matters of some public interest "where disclosure

---

[2] Plaintiff has not offered any specific challenges to the agencies' asserted bases for withholding records. He merely states that he "disagrees and objects to [the] claimed objections." Pl.'s Opp'n to Mot. for Summ. J. at 18.

may risk circumvention" of statutes or agency regulations. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *Schiller v. NLRB*, 964 F.2d 1205, 1206 (D.C. Cir. 1992).

Under this exemption, the DEA refused to disclose the Geographical Drug Enforcement Program ("G-DEP") codes and NADDIS numbers, including numbers assigned to confidential infomants. Decl. of Leila I. Wassom ¶50. The codes and numbers are part of DEA's internal system of identifying information and individuals. *Id.* The codes are assigned to all cases and indicate the classification of the violator, the types and quantities of drugs involved, and the suspected location and breadth of the criminal activity. *Id.* ¶ 50(a). According to the DEA, the disclosure of these codes would help identify the priority given to particular investigations, the types of criminal activities involved, and violator ratings. *Id.* ¶ 51. In addition, disclosure of the codes could allow suspects to avert detection and apprehension by the DEA. *Id.*

There is no significant public interest in the disclosure of the types of law enforcement codes that the DEA has withheld under Exemption 2. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 485-86 (D.C. Cir. 1980); *Coleman v. FBI*, 13 F. Supp. 2d 75, 79 (D.D.C. 1998); *Watson v. U.S. Dep't of Justice*, 799 F.Supp. 193, 195 (D.D.C. 1992). The Court finds that there is not a public interest sufficient to override the agency's appropriate interest in maintaining the secrecy of their internal procedures. This internal agency information was properly withheld from Plaintiff.

### C. Exemption 5

FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. §552(b)(5). This exemption allows an agency to withhold materials that would be

privileged from discovery in civil litigation. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). The exemption encompasses three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege. *Id.*

The record the EOUSA withheld under this section is a one-page letter "from U.S. Probation Office to the AUSA and Victim Witness Coordinator seeking information about third-party individuals and losses incurred as a result of the conduct of" Plaintiff. Decl. of John F. Boseker ¶ 41.[3] The EOUSA asserts that the document was withheld to protect privileged intra-agency communication made in the course of the prosecution of Plaintiff and that the document discusses "evidentiary needs and procedures to be followed in that phase of prosecution." *Id.* As justification for the withholding, the EOUSA cites the attorney work-product and deliberative process privileges. *Id.* ¶ 28.

The attorney work-product privilege protects from disclosure documents and other memoranda prepared by an attorney in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 504-05 (1947); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997). In the FOIA context, the courts have taken an approach favoring the application of this privilege. *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. 04-1724, 2006 WL 696053, at *14 (D.D.C. Mar. 20, 2006). The test is whether the information would be routinely disclosed in private litigation to any party. *Sears, Roebuck & Co.*, 421 U.S. at 149 n.16.

The deliberative process privilege exempts from disclosure "recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal

---

[3] The document is described in the Records Withheld section of the declaration.

opinions of the writer rather than the policy of the agency." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 306 F. Supp. 2d 58, 70 (D.D.C. 2004) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 856 (D.C. Cir. 1980)).   To qualifying for withholding, the material must be predecisional and deliberative.  *Nat'l Assn. of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002). A document is predecisional if it was prepared in order to assist an agency's decisionmaker in arriving at his decision and deliberative if it "reflects the give-and-take of the consultive process." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

        The EOUSA contends that the letter from the Probation Office to the Assistant United States Attorney and Victim Witness Coordinator includes matters related to trial preparation, strategy, personal opinions, and evaluations made during or in anticipation of litigation.  Decl. of John F. Boseker ¶ 29.   In addition, the EOUSA states that the document is covered by the deliberative process privilege because it contains discussions between the USA/SDTX and other state and federal agencies regarding possible prosecutions of Plaintiff.  *Id.* ¶ 30.  According to the agency, disclosure of this information would reveal litigation issues, alternatives, and strategies.  *Id.*

        For Exemption 5 to apply to a particular record, the agency must supply sufficient information so that a court "can sensibly determine whether each invocation of deliberative process privilege or work product shield is properly grounded."  *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 584 (D.C. Cir. 1987).  When an agency asserts an exemption, it has the burden of establishing the right to withhold the document.  *Petroleum Info. Corp.*, 976 F.2d at 1433. Conclusory assertions of privilege do not satisfy the agency's burden; the claims must be supported with specificity and in detail.  *Senate of P.R.*, 823 F.2d at 585 (citations and quotations omitted).

The EOUSA has not provided sufficient information to enable the Court to determine the applicability of the privileges. The description of the document is vague and the offered rationales merely conclusory. As the record stands, it is difficult to understand when the document was generated and for what purpose. Therefore, the Court cannot find that the document falls within the ambit of Exemption 5.[4]

### D. Exemption 7(C)

Exemption 7(C) concerns the privacy interests of third parties and requires the Court to balance such privacy interests against the public interest in disclosure of the records. *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 773-75 (1989). The exemption protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C). In order to properly withhold materials under this exemption, two components must be satisfied: (1) the materials must be law enforcement records; and (2) disclosure of the materials must involve an invasion of a third party's privacy. *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982); *Dipietro v. Executive Office for U.S. Attorneys*, 357 F. Supp. 2d 177, 184 (D.D.C. 2004).

The EOUSA and DEA have asserted this exemption to withhold personal information about third parties who were involved with or associated with Plaintiff, the identities of confidential sources, the identities of federal, state, and local law enforcement officials, and other government employees named in investigative files. Decl. of John F. Boseker ¶¶ 8, 34, 41; Decl. of Leila I.

---

[4] The EOUSA has also withheld this document under Exemption 7(C), which will be discussed below.

Wassom  ¶¶ 58, 60.  According to the declarations provided by the EOUSA and the DEA, this information is contained in investigative files compiled for law enforcement purposes.  *Id.* ¶ 54; Decl. of John F. Boseker ¶ 31.

In cases involving personal data on private citizens in law enforcement records, "the privacy interest . . . is at its apex."  *Reporters Comm.*, 489 U.S. at 780.  The names and identities of individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files are protected from disclosure. *Baez v. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980); *Perrone v. FBI*,  908 F.Supp. 24, 26 (D.D.C. 1995) (citing  *Reporters Comm.*, 489 U.S. at  779);  *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C. 1987).  "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity."  *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir.1990) (citations and quotations omitted); *see also Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir.1996) ("[R]ecords contain[ing] the names of informants, witnesses, and potential suspects who are relevant to its criminal investigation . . . clearly fall within the scope of Exemption 7(C).").  The Court concludes that the EOUSA and DEA have properly invoked Exemption 7(C) to protect the privacy interests of third parties.[5]

Having determined that the EOUSA and the DEA have properly asserted a privacy interest under Exemption 7(C), the Court must balance the privacy interest of the individual mentioned in the record against the public's interest in disclosure.  *Favish*, 541 U.S. at 172.  Once

---

[5]  Because the Court finds that nondisclosure of the identities of law enforcement officials is justified under Exemption 7(C), there is no need to decide whether nondisclosure was appropriate under the EOUSA and DEA's alternative rationale, Exemption 7(F).

a privacy interest is identified under Exemption 7(C), the FOIA records requester must establish that (1) the public interest is a significant one; and (2) the information is likely to advance that interest. *Id.* The requester must provide evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred. *Id.* at 174.

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir.1992) (internal quotation marks and citation omitted). Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for purposes of Exemption 7(C). *Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) (quoting *Davis*, 968 F.2d at 1282)). In the absence of any evidence that the government agency has engaged in illegal activity, information that interferes with a third party's privacy is exempt from disclosure. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998); *Voinche v. FBI*, 46 F. Supp. 2d 26, 33 (D.D.C. 1999).

Plaintiff has not identified a public interest or alleged agency misconduct. Instead, he asserts that he needs the requested documents in order to pursue a challenge to his conviction. Compl. ¶ 35. Plaintiff's desire for the information is irrelevant. *Favish*, 541 U.S. at 174; *Reporters Comm.*, 489 U.S. at 773. The fact that Plaintiff seeks the information to advance a private agenda is not a proper basis for disclosure under FOIA. *See, e.g., Horowitz v. Peace Corps*, 428 F.3d 271, 278-79 (D.C. Cir. 2005) (plaintiff's need for records to pursue civil suit irrelevant), *cert. denied*, 126 S.Ct. 1627 (2006); *Taylor v. U.S. Dep't of Justice*, 268 F. Supp. 2d 34, 36 (D.D.C. 2003) (no public interest in disclosure of information to assist plaintiff in challenging conviction). Therefore, the EOUSA and DEA properly withheld the records under Exemption 7(C).

15

**E. Exemption 7(D)**

Exemption 7(D) of FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).

To invoke Exemption 7(D), an agency must show either that a source provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 179-81 (1993). To establish the former, an agency must present probative evidence that the source did in fact receive an express grant of confidentiality. *Antonelli v. BATFE*, No. 04-1180, 2006 WL 367893, at *6 (D.D.C. Feb. 16, 2006) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998)). "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." *Id.*

Under this exemption, the DEA withheld one page of a three-page cable that contained information about the interaction between a coded informant, an undercover DEA agent, and a third party. Decl. of Leila I. Wassom ¶ 64 & Exh. W at 104. Coded informants are individuals who have a continuous cooperative relationship with the DEA. *Id.* ¶ 63. Such individuals are

16

expressly assured confidentiality in their identities and the information they provide to DEA.  *Id.*

The coded informants are also assured that their names will not appear in DEA investigative files

and they will be given an identification code.  *Id.*  The informant at issue here is identified in the

document as a coded informant.  *Id.*, Exh. W at 104.

        The DEA has provided sufficient evidence that the informant was given an express

assurance of confidentiality by the agency.   The affidavit provided by the DEA and the

accompanying exhibits establish the policies and practices of the DEA regarding informants and the

application of those guidelines to the informant in this case.  The one-page document was properly

withheld under Exemption 7(D).

        Plaintiff also sent a request to the EOUSA for records related to confidential

informants in his case and records related to confidential informant Rosalio Morales Cabrera. Decl.

of John F. Boseker Exh. D.  The EOUSA does not claim that these informants were given an express

assurance of confidentiality.  In this situation, the proper inquiry is "whether the particular source

spoke with an understanding that the communication would remain confidential."  *Landano*, 508

U.S. at 172.  The government is not entitled to a presumption that all sources supplying information

in the course of a criminal investigation are confidential sources.  An implied grant of confidentiality

may be inferred, however, from the circumstances surrounding the imparting of the information,

including the nature of the criminal investigation and the informant's relationship to the target.  *Id.*;

*Computer Prof'ls*, 72 F.3d at  905-06.

        Plaintiff was convicted of selling large quantities of methamphetamine on a number

of occasions. Compl. Exh. A.  Given this fact, the EOUSA asserts that the release of these sources'

names could deter the participation of informants in future criminal investigations.  Decl. of John

F. Boseker ¶ 39.  Release of the information would possibly endanger informants, making them targets of harassment and reprisal.  *Id.*

Informant confidentiality can be implied in situations where the crime is related to the illegal drug trade, because of the violence and the risk of reprisal attendant to this type of crime. *Mays v. DEA*, 234 F.3d 1324, 1329-30 (D.C. Cir.2001); *Wilson v. DEA*, 414 F. Supp. 2d 5, 14 (D.D.C. 2006).  Because of the nature of Plaintiff's crime, the Court can reasonably infer that the informants cooperated under an implied assurance of confidentiality.  Therefore, the names of confidential sources and the information they provided to law enforcement in this case were properly withheld under Exemption 7(D).

### F. FBI

The FBI conducted a search in response to Plaintiff's FOIA request and did not find any responsive records.  The Court has already concluded that the search was adequate to fulfill the agency's obligations under FOIA.  To prevail in a FOIA case, a plaintiff must show that an agency has improperly withheld agency records.  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004).  A suit is only authorized under FOIA against federal agencies to remedy an agency's improper withholding of information.  *Kissinger*, 445 U.S. at 150.  Because the FBI did not withhold any documents, Plaintiff does not have a viable FOIA claim against the agency.

### G. Referral of Record from EOUSA to DEA

While conducting a search for documents responsive to Plaintiff's FOIA request, the EOUSA discovered a one-page document that had originated with the DEA.  Decl. of Leila I. Wassom Exh. P. The EOUSA referred the document to the DEA for processing and a direct response

to the Plaintiff.  *Id.*  In situations such as this, the Court must determine whether the referral resulted

in the improper withholding of documents.  *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175

(D.C. Cir. 1998); *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 40 (D.D.C. 2003).

       The DEA withheld portions of the one-page document pursuant to Exemption 7(C)

because the information concerned third parties.  Decl. of Leila I. Wassom Exh. R.  Under this

exemption, the DEA withheld the names and information related to law enforcement officials and

other government employees.  *Id.* ¶¶ 58, 60.  The Court finds that the referral of the document and

the withholding by DEA were in compliance with FOIA requirments.

### H. *Vaughn* Index

       In a FOIA action, the government is required to provide a detailed index to the

requestor "itemizing each item withheld, the exemptions claimed for that item, and the reasons why

the exemption applies to that item."  *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir.

1984) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973)).

       Plaintiff asserts that summary judgment is improper because the EOUSA did not

submit a *Vaughn* index.  Pl.'s Opp'n to Mot. for Summ. J. at 14.  However, the form of the index

is immaterial, and affidavits providing the equivalent of the information required by *Vaughn* can

suffice to meet an agency's responsibility.  *Spirko*, 147 F.3d at 184 n.4.  The EOUSA has fulfilled

the index requirement.  With respect to these records, the EOUSA's declaration and attachments

adequately specify "in detail which portions of the document[s] are disclosable and which are

allegedly exempt."  *Vaughn*, 484 F.2d at 827.

**I. Segregability**

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b). A district court in a FOIA case has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement*, 177 F.3d at 1028. An agency must provide a detailed justification and not just conclusory statements to prove that it has released all reasonably segregable information. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 01-639, 2006 WL 2038513, at *2 (D.D.C. July 19, 2006) .

Having reviewed the declarations of Defendants EOUSA and DEA, the Court concludes that these Defendants have withheld only the records or portions of records exempt under FOIA's provisions, and that all reasonably segregable material has been released. *See* Decl. of John F. Boseker ¶¶ 41, 42; Decl. of Leila I. Wassom ¶¶ 69-76.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment will be granted. A separate order accompanies this Memorandum Opinion.

Date: August 11, 2006                                         _____/s/_____

                                                              ROSEMARY M. COLLYER
                                                              United States District Judge

20